712 P.2d 721

**GRO–MOR, INC., an Idaho corporation, Plaintiff-Respondent-Cross Appellant,**

v.

**Larry A. BUTTS, Robert J. Flynn and Joe A. Waters, Defendants-Appellants-Cross Respondents.**

**Nos. 15402, 15621.**

Court of Appeals of Idaho.

Dec. 24, 1985.

Lowell N. Hawkes and Scott L. Burnham, Hawkes, Esplin and Burnham, Pocatello, for defendants-appellants, cross-respondents.

Thomas J. Holmes, Hawley, Troxell, Ennis & Hawley, Pocatello, for plaintiff-respondent, cross-appellant.

HURLBUTT, Judge, Pro Tem.

This case comes before the court on the consolidated appeals of Larry Butts, who contests the entry of a default judgment against him, and that of Robert Flynn and Joe Waters who contest the entry of summary judgment against them. Gro-Mor, Inc., the judgment creditor, cross-appeals from the refusal of the district court to allow recovery of interest on the judgments, at the parties' contract rate. We affirm.

In March 1982, Waters, Flynn and Butts were all doing business as Nevada Fertilizer and Chemical Company (hereinafter "NFC"). Waters, on behalf of the trio, negotiated with Gro-Mor, Inc., an Idaho corporation, for the purchase of fertilizer to be delivered to NFC customers. Fertilizer was to be manufactured in Idaho by Gro-Mor and delivered to locations in Nevada. Sales orders placed by NFC and delivered by Gro-Mor prior to April 22, 1982, totaled $22,667.06.

NFC was incorporated in Nevada on April 11, 1982. Gro-Mor admittedly learned of the corporate status of NFC on August 12, 1982. Between April 22, 1982 and August 12, 1982, further deliveries were made by Gro-Mor to NFC. Partial payments were made for those deliveries. On August 12, 1982, there was due and owing from NFC to Gro-Mor $74,109.09, plus delivery costs of $6,950.94, all of which was accruing finance charges at the agreed contract rate of two percent per month.

Suit was initiated by Gro-Mor against Butts, Flynn and Waters individually on March 9, 1983. Defaults were entered against Flynn and Waters on May 9, 1983, and against Butts on May 18, 1983. On December 9, 1983, the trial court set aside the defaults entered against Flynn and Waters. The court declined to set aside the default entered against Butts, and on January 3, 1984, default judgment was entered against him. On April 26, the court entered summary judgment against Flynn and Waters.

I

We will address first the appeal of Larry Butts from the default judgment entered against him. Butts was personally served with process in California on April 22, 1983. Upon Gro-Mor's application, a default was entered against him on May 18, 1983. Butts, joining Flynn and Waters, moved to set aside the default. In a letter to the court, Butts gave two reasons underlying his claim for relief. First, that he had decided to use Waters' attorney, and because Waters was unable to act on the suit he had been foreclosed to proceed himself. Secondly, he states he was unaware of the twenty-day answering time in Idaho, but was aware that California had a thirty-day time limit.

The court ruled that as a matter of law there was no basis for granting Butts' motion to set aside the default. In particular the court noted that, rather than establishing excusable neglect, Butts' assertions "appear to simply demonstrate mere neglect."

■ Our standard for review of a grant or denial of relief from a default judgment is as follows: Where (1) the findings of the trial court are not clearly erroneous; (2) the court applies to those facts the proper criteria under I.R.C.P. 60(b)(1); and (3) the court's legal conclusions follow logically from the application of such criteria to the facts found, then the court will be deemed to have acted within its sound discretion and its decision will not be overturned on appeal. *Shelton v. Diamond International Corp.*, 108 Idaho 935, 703 P.2d 699 (1985), *citing Avondale on Hayden, Inc. v. Hall*, 104 Idaho 321, 658 P.2d 992 (Ct.App. 1983). This rule is tempered by favoring relief in doubtful cases. *Id.*

■ Under I.R.C.P. 55(c), a default judgment may be set aside when grounds for relief have been established pursuant to Rule 60(b). Rule 60(b) requires a showing that there exists mistake, inadvertence, surprise or excusable neglect and a meritorious defense. *Marco Distributing, Inc. v. Biehl*, 97 Idaho 853, 555 P.2d 393 (1976). Only a mistake of fact, and not of law, is sufficient to warrant setting aside a default judgment. *Hearst Corp. v. Keller*, 100 Idaho 10, 592 P.2d 66 (1979). Excusable neglect must be conduct of a type expected of a reasonably prudent person under the same circumstances. *Id.*

■ In making its findings, the trial court properly considered the factors denominated in I.R.C.P. 60(b)(1). Those findings are clearly supported in the record. The court's decision follows logically from application of the 60(b) criteria to the facts. The record demonstrates that Butts' response to this lawsuit merely constituted abject neglect. We believe that no reasonably prudent person under those circumstances would have stood idly by as did defendant Butts. Because no mistake, inadvertence, surprise or excusable neglect has been established, consideration of the presence of a meritorious defense is unnecessary. The decision of the trial court denying the motion to vacate the default judgment as to Butts is affirmed.

## II

We turn next to the summary judgment entered against Flynn and Waters. The default entered earlier against Flynn and Waters was set aside December 9, 1983, and the matter was set for trial. Prior to trial, however, Gro-Mor moved for summary judgment based upon affidavits and pleadings already on file. No additional affidavits were filed by Flynn and Waters subsequent to the vacation of the default. Gro-Mor's motion for summary judgment against Flynn and Waters was granted by the trial court.

Flynn and Waters contend that the granting of summary judgment was improper on two grounds. First, they assert that, by having found the existence of a meritorious defense and ordering that the default be vacated, the court as a matter of law had already determined the existence of sufficient material facts so as to preclude summary judgment. Second, they contend that the state of the record before the court showed the existence of genuine issues of material fact with respect to Gro-Mor's knowledge of the corporate status of NFC, protecting them from individual liability for the debt.

### A

■ In respect to Flynn and Waters' first assertion, we firmly disagree. Granting a motion to vacate a default judgment does not foreclose the trial court from subsequently granting summary judgment against the party who has been allowed back into the case. We believe there is a difference in the required inquiry and application of law for the two motions.

To vacate a default the court must find the possible existence of a meritorious defense based upon objective facts. However, when presented with a motion for summary judgment, the court must, considering all the facts of record, determine whether there exists a genuine issue of material fact, and, if none is found, whether judgment should enter as a matter of law. While the finding of the possible ex-

istence of a meritorious defense is a factor which may be considered in reviewing a motion for summary judgment, it does not in and of itself fully answer the two required inquiries. The court must delve further to determine whether a genuine issue of material fact exists and, more critically, if no factual issue remains, whether as a matter of law judgment must issue. This application of the law to the facts constitutes the critical difference between the two motions. These considerations go so far beyond those involved in considering a motion to vacate a default that the granting of such a motion has only peripheral application to consideration of a motion for summary judgment.

▮ Here, the trial court vacated the default judgment by finding the existence of facts which could serve as a defense to the action. The trial court specifically held it was relying on statements of the attorneys to that effect. The propriety of the court's decision vacating the default is not at issue, and we express no opinion in this regard. It must also be noted that in reviewing requests for relief from default judgment pursuant to I.R.C.P. 60(b)(1), the trial court is required to temper its consideration by the stated policy favoring relief in doubtful cases and allowing such cases to be tried on the merits. *Shelton, supra.* The record clearly reflects that the trial court followed this policy in granting Flynn and Waters relief from the default. With this new opportunity to defend, these defendants should not have dormantly failed to respond to the motion for summary judgment. Their reliance on the court's order granting relief from default, in response to Gro-Mor's motion for summary judgment, was inappropriate and unsupported in law. Even accepting all facts propounded by Flynn and Waters, there existed no genuine issue of material fact, and the application of these facts to the law required entry of summary judgment.

## B

Flynn and Waters further argue that there existed a genuine issue of material fact relating to the knowledge, or lack thereof, of Gro-Mor concerning NFC's corporate existence. The trial court found that there existed no facts which showed Gro-Mor had knowledge of the corporate status of NFC prior to August 19, 1985.[1]

The record reflects that the only evidence presented by Flynn and Waters was contained in affidavits submitted as a part of their motion to vacate the default. Therein they simply state that they believed Gro-Mor knew of NFC's corporate status, because Wayne Seamons, a Gro-Mor principal, was the father of Jay Seamons, a NFC agent. However, an affidavit on file by Jay Seamons specifically contradicts that belief, stating that he had never told any Gro-Mor principal or employee, including his father, of the corporate status of NFC prior to September 1982.

▮ The scope of our review is limited to determining only whether there exists genuine issues of material fact and whether Gro-Mor is entitled to judgment as a matter of law. *Mitchell v. Siqueiros,* 99 Idaho 396, 582 P.2d 1074 (1978); *Steward v. Hood Corp.,* 95 Idaho 198, 506 P.2d 95 (1973); I.R.C.P. 56(c). Here, reviewing the entire record, we do not find the existence of any genuine issue of material fact. We are unable to find any facts submitted by Flynn and Waters which raise any disputed issue as to when Gro-Mor learned of NFC's corporate existence. Defendants' affidavits state no more than mere denials, assertions or beliefs of what might have been and are legally insufficient to avoid judgment and create a genuine issue of material fact.

Since Gro-Mor learned of NFC's corporate status on August 12, 1982, Flynn, Waters and Butts are personally liable for all deliveries placed prior to that date. Al-

---

**1.** While the court found Gro-Mor learned of NFC's corporate existence August 19, 1985, Gro-Mor subsequently withdrew its motion for summary judgment relative to one invoice for $3,548.85 for a delivery made August 11, 1982, stating that it received a letter from NFC on August 12, 1982, which disclosed NFC's corporate status.

though it is argued that Flynn and Butts were not sufficiently involved in NFC so as to become personally liable for its debts, the record is replete with facts showing their involvement in NFC and its operations prior to incorporation, and the trial court so found. Appellants simply are inviting this Court to engage in fact finding. We decline to do so. No finding having been shown to be unsupported in this record, we decline to review the matter further.

Flynn and Waters, having failed to meet their responsibility to place in the record before the trial court controverted material facts requiring resolution by trial, they must, therefore, be denied relief on appeal. *Berg v. Fairman,* 107 Idaho 441, 690 P.2d 896 (1984); I.R.C.P. 56(e). The summary judgment granted by the trial court in favor of Gro-Mor is hereby affirmed.

### III

Finally, we turn to Gro-Mor's cross-appeal. It contends the trial court erred by awarding the statutory rate of interest of eighteen percent annually rather than continuing the interest rate of two percent monthly as provided by the parties' contract. The trial court ordered that pre-judgment interest accrue at the contract rate of two percent per month and post-judgment interest accrue at eighteen percent per year pursuant to I.C. § 28–22–104(2). This section states "the legal rate of interest on money due on the judgment of any competent court or tribunal shall be eighteen cents (18¢) on the hundred by the year." Gro-Mor maintains that where parties freely and voluntarily enter into a lawful contract providing for interest, the contract rate should apply on post-judgment interest ordered by the court. They argue that to do otherwise would allow debtors to default on their obligation and take advantage of the lower statutory interest rate on judgments.

Gro-Mor cites *Turner Coleman, Inc. v. Ohio Construction & Engineering, Inc.,* 272 S.C. 289, 251 S.E.2d 738 (1979) for authority that parties may contract for interest rate in excess of the statutory interest rate on judgments. In construing a statute similar to I.C. § 28–22–104(2), the South Carolina Supreme Court found nothing in the language of the statute that indicated an intent "to alter interest rates bargained for and agreed upon by the parties." *Turner,* 251 S.E.2d at 740. The court concluded that the statutory rate for judgments applies only in the absence of a written contract which specifies a rate of interest. We decline to follow this interpretation.

Section 28–22–104 consists of two independently operating parts. Subsection (1) specifies the legal rate of pre-judgment interest where "there is no expressed contract in writing." Subsection (2) fixes the interest rate on judgments at eighteen percent. Thus, as is the case here, the court may award pre-judgment interest at a higher contract rate, but the statute will control the assigned interest rate once the debt is reduced to a judgment. *See Camp v. Jiminez,* 107 Idaho 878, 885, 693 P.2d 1080, 1088 (Ct.App.1984). Subsection (2) contains no language which would allow a rate other than the denominated interest rate. A statute is to be construed according to its plain, obvious, and rational meaning. *Hartley v. Miller-Stephan,* 107 Idaho 688, 692 P.2d 332 (1984).

While the legislature permits parties to contract for pre-judgment interest rates exceeding the legal rate, the legislature limited the amount of interest which attaches to post-judgment debts. Although Gro-Mor argues that a lower interest rate for post-judgment obligations encourages debtors to default, it is for the legislature, "not the courts, to determine whether the public is better served by higher post-judgment interest rates." *Eskay Plastics, Ltd. v. Chappell,* 34 Wash.App. 210, 660 P.2d 764, 766 (1983). The legislature can reasonably regulate the post-judgment interest rate when the power of judgment and execution is used to collect debts. *Id.*

The judgments entered by the district court are affirmed. Costs and attorney fees to Gro-Mor pursuant to I.C. § 12–120.

WALTERS, C.J., and SWANSTROM, J., concur.