786 P.2d 606

**PRICECO, INC., Plaintiff–Appellant,**

v.

**Mae YOUNGSTROM, Defendant–Respondent.**

No. 17728.

Court of Appeals of Idaho.

Feb. 2, 1990.

John B. Kugler, Pocatello, for appellant.

Stephen G. Larsen, Pocatello, for respondent.

BURNETT, Judge.

This case presents an issue of first impression in Idaho. We must decide whether—and under what circumstances—an officer of a corporation may be personally liable for a debt incurred while the corporation's charter is in forfeiture.

The issue is raised by Priceco, Inc., which brought this action to collect money due on a contract. As the case unfolded, it became apparent that the money was owed by a corporation that had forfeited its charter. Although Priceco initially questioned the existence of the corporation, it ultimately claimed that Mae Youngstrom was personally liable, as a corporate officer, upon any contract made during the forfeiture period. A magistrate ruled otherwise, entering summary judgment against Priceco. The district court later upheld the judgment.

In this appeal, Priceco contends that the lower courts misperceived the law governing corporate officer liability. Priceco also attacks the summary judgment on procedural grounds, contending that the magistrate erred in giving Youngstrom relief from an earlier default judgment and in refusing to compel discovery. For reasons to which we will turn presently, we find no procedural error by the magistrate, but we conclude that the summary judgment must be set aside on the substantive issue of officer liability.

I

The underlying facts are somewhat convoluted. At times pertinent to this case, Mae Youngstrom was the corporate secretary of C.W. Inc. (also identified in the record as C.W. Incorporated and as C.W. Corporation).[1] C.W. Inc. was chartered as an Idaho corporation, conducting business in Pocatello as Croly's Signsystems or as Signsystems, Inc. The principals in the business were Mae Youngstrom, John C. Croly and Richard Campbell. Youngstrom

---

1. The record suggests that Youngstrom was a shareholder in addition to serving as the corporate secretary. Her status as a shareholder is of no moment in this litigation, however, because Priceco has not argued liability upon a theory of "piercing the corporate veil."

joined Croly and Campbell in signing and filing with the Bannock County Recorder a "Certificate of Trade Name" which recited that these individuals were doing business under the name or style of "C.W. Corp. dba Signsystems, Inc."[2]

In 1983, the business entered a contract with Priceco to install a sign at a Burger King restaurant in Chubbuck, Idaho. At that time C.W. Inc.'s charter was in forfeiture for failure to submit the required annual report and to pay the corporate franchise tax. *See* I.C. § 30–1–134. Priceco performed the contract and demanded payment. When no money was forthcoming, Priceco sued the three individuals—Youngstrom, Croly and Campbell. On June 12, 1984, C.W. Inc. obtained a reinstatement of its charter, and three weeks later it filed a petition in bankruptcy. The debt claimed by Priceco was listed in the bankruptcy schedules as an obligation of the corporation. John Croly also filed a personal petition in bankruptcy. Richard Campbell could not be found for service of process on Priceco's complaint. Thus, Mae Youngstrom, who was duly served, became the only viable defendant in this action.

Youngstrom initially attempted to settle the case out of court. Due to her delay in filing an answer, the magistrate entered a default judgment. However, Youngstrom moved successfully to obtain relief from the judgment, and she filed an answer denying any individual liability for the Priceco debt. Subsequently, she responded to a request for admissions but failed to answer certain interrogatories. Priceco moved for sanctions or for an order compelling discovery. Youngstrom countered with a motion for summary judgment on the merits of Priceco's claim against her. The magistrate granted Youngstrom's motion and declined to impose any discovery sanctions. The district court upheld the summary judgment, and this appeal followed.

## II

■ We can dispose briefly of Priceco's procedural attacks upon the judgment. As noted above, Priceco contends that the magistrate erred in granting relief from the earlier default judgment and in refusing to compel discovery. Although these issues have been couched in the phraseology of legal error, each of them actually was addressed to the magistrate's sound discretion. In order to determine what competing considerations the magistrate might have weighed in exercising such discretion, it would be essential for us to review transcripts of the proceedings in which the default and discovery issues were argued to the magistrate. None of these transcripts, however, has been included in the record on appeal.

With respect to issues of legal or factual error, our Supreme Court has said: "It is fundamental that error will not be presumed, but must be shown affirmatively by the appellant on the record." *Dawson v. Mead,* 98 Idaho 1, 3, 557 P.2d 595, 597 (1976). A parallel statement may be made with respect to issues of discretion. An appellant must present a full record pertinent to the challenged exercise of discretion. Here, Priceco has failed to provide an adequate record. Accordingly, we will not disturb the magistrate's rulings on the default and discovery issues.

## III

Now we examine the substantive question of corporate officer liability. On this question, as on any question framed by a summary judgment, our inquiry is twofold. We must determine whether there is a genuine dispute as to a material fact and, if not, whether the party prevailing below was entitled to judgment as a matter of law. *Gro–Mor, Inc. v. Butts,* 109 Idaho 1020, 712 P.2d 721 (Ct.App.1985). Of course, our inquiry does not always follow this sequence, for in some cases it is necessary to identify the applicable law in order to determine what facts are "material". This is such a case.

---

**2.** This confusion of corporate and trade names may have created uncertainty about the actual roles played by the corporation and the individuals. Nonetheless, the parties eventually framed the issue in this case as one of corporate officer liability. We will accept that characterization for the sake of today's discussion.

## A

■ Our analysis begins with the legal principles governing forfeiture of the corporate charter. It is axiomatic that doing business through a corporation is a privilege created, and closely regulated, by the state. If a corporation's charter is forfeited, the consequences are clear and immediate. Idaho Code § 30–1–135 provides that *"it shall be unlawful* for any forfeited domestic or foreign corporation to exercise its corporate powers or *to transact any business* in this state." (Emphasis added.) Idaho Code § 30–1–136 further provides that the directors of a forfeited corporation are "deemed" to be "trustees" with power to "settle the affairs of the corporation...." These trustees stand in place of the corporate entity. A forfeited corporation cannot be sued, nor can judgment be entered against it, in its corporate name. *Jolley v. Puregro Co.,* 94 Idaho 702, 705, 496 P.2d 939, 942 (1972), *overruled on other grounds, Cheney v. Palos Verdes Investment Corp.,* 104 Idaho 897, 665 P.2d 661 (1983). *See also Garrett v. Pilgrim Mines Co.,* 47 Idaho 595, 277 P. 567 (1929) (interpreting earlier statute substantially similar to I.C. § 30–1–135).

■ Forfeiture is not to be confused with dissolution under Idaho law. Dissolution is a termination of corporate existence. Forfeiture is a lapse of corporate powers, once described as a form of "suspended animation." *Ferguson Fruit and Land Co. v. Goodding,* 44 Idaho 76, 90, 258 P. 557, 561 (1927). *See also Caxton Printers, Ltd. v. Ulen,* 59 Idaho 688, 86 P.2d 468 (1939); *Pacific Northwest Bell Telephone Co. v. Rivers,* 88 Idaho 240, 398 P.2d 63 (1964). Dissolution may follow a forfeiture, either by action of the principals or by a passage of ten years without reinstatement of the corporate charter. *See* I.C. §§ 30–1–82 to –84, and 30–1–138.

■ These cases and statutes, taken together, teach us that although the corporation does not disappear upon forfeiture, its functions are severely curtailed. It is re-duced to operating by, and in the names of, statutory trustees who are charged with settling the corporation's affairs. There is no room in this scheme for the corporation's officers to continue doing business as usual through the corporate structure.[3]

■ Our inquiry, then, is narrowed to whether officers who unlawfully continue doing business should be personally liable for any unpaid obligations they incur. The courts nationwide are divided on this question. *See generally* 16A FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS §§ 7997, 7998 and 8132.1 (D. Nelson and M. Wasiunec rev. ed. 1988) (hereafter cited as FLETCHER). Some courts have refused to recognize any personal liability in the absence of a specific legislative mandate. They suggest that statutes like I.C. § 30–1–135, prohibiting corporations to do business while in forfeiture, should not be given their literal meaning; rather the statutes should be viewed as mere devices to encourage the payment of franchise fees. *E.g., Bank of America Nat'l Trust and Savings Ass'n v. Morse,* 265 Or. 72, 508 P.2d 194 (1973).

We do not think Idaho's statute should be so trivialized. A statute declaring certain acts to be unlawful clearly implies a potential liability for acting unlawfully. Moreover, we think the better reasoned cases recognize that corporate officers cannot invoke a corporate shield against liability while they are acting in disregard of a statutory command to cease doing business during forfeiture.

Many of the cases distinguish between contracts made to continue business unlawfully and contracts related to settling the corporation's affairs. Officers generally are held liable upon the former, but not the latter. FLETCHER § 8132.1 at 405. Such treatment of officer liability is analogous to, and consistent with, the Idaho standard governing liability of directors who become statutory trustees when a forfeiture occurs. *See generally Smith v. Great Basin*

---

3. Our Supreme Court expressed a similar view in *Weil v. Defenbach,* 36 Idaho 37, 208 P. 1025 (1922), where it suggested in the text and in the Court's syllabus that corporate officers cease to function in their elected capacities when the corporation is dissolved or forfeits its charter.

*Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977). This standard logically would apply to those officers who become statutory trustees because they are also directors or because they are appointed to serve as trustees, upon forfeiture.

For officers who do not become statutory trustees, I.C. § 30–1–135 lays down a blanket prohibition against doing business during forfeiture. This does not mean, however, that liability necessarily extends to *all* such officers. For obvious reasons, the courts are reluctant to impose personal liability upon officers who— through no fault of their own—are unaware of a forfeiture, or who have not participated in any improper transactions. *See* cases collected in 19 C.J.S. *Corporations* § 841 (1940 and current supplement), at 268–69. Accordingly, we hold that liability is limited to those officers who have actual or constructive knowledge of the corporation's forfeiture and who personally participate in transactions giving rise to unpaid obligations. *Accord* FLETCHER § 8132.1 at 405; *Mobil Oil Corp. v. Thoss,* 385 So.2d 726 (Fla.App.1980); *Steve's Equipment Service, Inc. v. Riebrandt,* 121 Ill.App.3d 66, 76 Ill.Dec. 612, 615, 459 N.E.2d 21, 24 (1984); *Kessler Distributing Co. v. Neill,* 317 N.W.2d 519 (Iowa App. 1982).

### B

With this legal standard in mind, we return to the facts of the instant case. There has been no showing that Youngstrom was a statutory trustee; in any event, it appears undisputed that C.W. Inc. entered the Priceco contract for a continued business purpose rather than to settle its affairs. Therefore, the critical issues are Youngstrom's knowledge of the forfeiture and her participation in the transaction.

Youngstrom submitted an affidavit disclaiming any such knowledge or participation. The record indicates that John Croly played an important role in the Priceco contract. On the other hand, the record also reflects Youngstrom's status as the corporate secretary during the period of forfeiture, and it contains a copy of a lien waiver given by the corporation in 1983 to Burger King, acknowledging payment for the sign installed by Priceco. Mae Youngstrom signed the lien waiver, notarizing the signature of the corporation's office manager. Upon this document, upon Youngstrom's declaration of personal participation in the business as reflected in the "Certificate of Trade Name" mentioned above, and upon Youngstrom's role as the corporate secretary, a trier of fact *could* infer that Youngstrom knew of the forfeiture and was an active participant in the business, including the Priceco transaction. At the very least, Youngstrom's knowledge and participation are factual issues material to the outcome of this case.

When factual issues turn on inferences, as they do here, a party resisting summary judgment is generally entitled to the benefit of any reasonable inferences that might be drawn in his or her favor. There is an exception to this rule where no jury has been requested, and the presiding judge will be the ultimate finder of the facts. *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982). If a judge exercises the *Ritchie* power to draw inferences, the judge must enter written findings to identify the inferences drawn and the evidentiary facts upon which they are based. *Argyle v. Slemaker,* 107 Idaho 668, 691 P.2d 1283 (Ct.App. 1984).

In this case, the pleadings do not contain a request for a jury trial; consequently, the magistrate possessed the *Ritchie* power. However, he did not make findings on the factual issues of Youngstrom's knowledge and participation in the Priceco transaction. Those issues do not yield such a clear answer, on the record before us, that we could resolve them *sua sponte* on appeal. Accordingly, we hold that genuine issues of material fact exist, precluding summary judgment. The judgment entered by the magistrate must be set aside.

### C

Our holding makes it appropriate to comment, for possible guidance on re-

mand, on whether eventual reinstatement of a corporate charter has any effect upon officer liability for debts incurred during forfeiture. It will be recalled that the corporation in this case obtained a reinstatement of its charter on June 12, 1984, nearly a year after Priceco had performed the contract. The Idaho statutes contain no express provision regarding the effect of reinstatement upon an officer's existing liability. The tenor of the statutes, however, suggests that the effect of reinstatement is prospective, not retrospective. Idaho Code § 30-1-137(c), for example, provides that a reinstated corporation's powers are restored "[f]rom and after the granting of the reinstatement."

This is consistent with decisions in other jurisdictions holding that if statutes are silent as to the effect of reinstatement, existing personal liability on the part of officers or directors is not eliminated. *See Kessler Distributing Co. v. Neill, supra,* and Annot., *Corporate Charter Reinstatement,* 42 A.L.R.4th § 19[c], at 428 (1985) (identifying cases on both sides of the question). There is some authority to the effect that reinstatement will absolve existing liability if the officers were, for good reason, unaware of the original forfeiture. *See* 19 C.J.S. *Corporations* § 841 (1940), at 268-69. However, those situations are already excluded from the standard of liability we have adopted today.

Giving prospective effect to reinstatement comports with common sense. If the law were otherwise, any existing personal liability could be extinguished simply by reinstating the corporate charter as a prelude to putting the corporation into bankruptcy—an event that arguably occurred in this case. Therefore, we hold that the reinstatement of C.W. Inc. in 1984 had no effect upon the individual liability, if any, incurred by Youngstrom during the period of forfeiture.

The district court's decision, upholding the summary judgment in favor of Youngstrom, is reversed. The case is remanded with instructions to vacate the judgment and to conduct further proceedings in the magistrate division, consistent with this opinion. Costs to the appellant, Priceco. Any claim of attorney fees under I.C. § 12-120, at trial or on appeal, may be considered on remand after the prevailing party ultimately has been determined.

SWANSTROM, J., and HART, J. Pro Tem., concur.