# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51046

| | | |
|---|---|---|
| RODNEY ARAIZA, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Boise, May 2024 Term |
| | ) | |
| v. | ) | Opinion Filed: July 15, 2024 |
| | ) | |
| STATE OF IDAHO, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Samuel A. Hoagland, District Judge.

The appeal is <u>dismissed</u>.

Erik Lehtinen, State Appellate Public Defender, Boise, attorneys for Appellant. Sally Cooley argued.

Raúl R. Labrador, Attorney General, Boise, attorneys for Respondent. Kenneth Jorgensen argued.

_____

BEVAN, Chief Justice.

This case comes to the Court on a petition for review from the Idaho Court of Appeals. After Rodney Araiza was convicted of first-degree murder and participating in a riot, he filed a post-conviction petition alleging actual innocence and requesting DNA and fingerprint testing. The district court summarily dismissed Araiza's petition, finding that DNA test results would not make it more likely that Araiza is innocent, and Araiza's remaining claim was barred by res judicata. The district court entered a final judgment on September 11, 2020. Araiza did not receive notice of that judgment until after the time to appeal had passed. Five months after learning his petition for post-conviction relief was summarily dismissed, Araiza filed a motion for relief from judgment under Idaho Rules of Civil Procedure 60(b)(1) and 60(b)(6). Following a stipulation between Araiza and the State, the district court reentered judgment. Araiza appealed from the reentered judgment, which was later dismissed by the Court of Appeals. He then petitioned this Court for review. For the reasons below, we dismiss Araiza's appeal as untimely.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 1988, prisoners rioted at the Idaho State Penitentiary and an inmate named Richard Holmes was stabbed to death in his cell. Multiple inmates were alleged to have participated in Holmes' killing, including Rodney Araiza. Araiza was ultimately charged with first-degree murder and riot.

### A.    The Trial

At his trial, the State presented evidence that Araiza, along with other prisoners, became violent and took over the Idaho State Correctional Institution. The inmates destroyed furniture, started fires, and broke down doors and walls. The State's evidence suggested that Araiza and other prisoners broke into Holmes' cell and stabbed him to death. The State called several correctional officers and inmates who testified about Araiza's participation in the riot and that Araiza was in Holmes' cell during the time of the murder. The State elicited testimony from inmates that Araiza admitted to killing Holmes. In an audio recording from the State, the jury heard Holmes plead for his life with an inmate named "Shorty." The State offered evidence that Araiza was the only inmate in that unit known as "Shorty." The State also presented evidence that Araiza's bloody palm prints were in Holmes' cell.

In his defense, Araiza called several inmates to testify that he was not near Holmes' cell during the murder, but instead, arrived after Holmes was dead. Araiza testified that he entered Holmes' cell after the murder to see if Holmes was all right. One inmate, Merle LaMere, testified at trial that Araiza did not commit the murder, but LaMere asserted the Fifth Amendment when asked whether he had killed Holmes. Araiza also presented evidence that other inmates also go by the nickname "Shorty." On June 23, 1989, a jury convicted Araiza of both charges.

### B.    Motion for New Trial

After his conviction, Araiza filed a motion for a new trial, claiming new evidence relevant to his case had been discovered. During the hearing on Araiza's motion, a prison volunteer chaplain named Paul Bull testified that LaMere confessed that he, along with two other inmates named Jon Sjogren and Darrell Clarke, killed Holmes and that Araiza had "nothing to do with" the murder. Four inmate witnesses also testified at this hearing on the motion for new trial, three of whom had testified in Araiza's defense at his murder trial. During Araiza's trial, these inmates testified to seeing people other than Araiza enter Holmes' cell during the riot, but they refused to identify the inmates for fear of their lives. However, during the hearing on the motion for a new

trial these inmates collectively identified LaMere, Sjogren, and Clarke as the inmates who entered Holmes' cell before his death, exiting with bloody clothing and weapons. In addition, the defense submitted affidavits from five jurors at Araiza's trial. The jurors generally expressed that they did not feel that the State proved beyond a reasonable doubt that Araiza was the person who physically stabbed Holmes and that others involved should be prosecuted. Importantly, however, the jurors also stated that they returned a guilty verdict because they believed Araiza had aided and abetted the murder.

On October 27, 1989, the district court denied the motion for a new trial. The decision noted that the

> State's theory of the case and the evidence presented to the jury showed that Mr. Araiza was one of a number of people involved in the riot and in the killing of Mr. Holmes. The jury was fully advised both by the State's witness and by the defendant's witnesses that other people were involved. The names of some of those persons were suggested to the jury during the course of the trial. The defendant's witnesses testified at trial that Mr. Araiza had no involvement whatsoever in the riot and the murder. The jury did not believe those witnesses and convicted Mr. Araiza. Now the defendant has presented additional evidence of the names [of] the other persons involved.

The district court found that the inmate witnesses were not credible as their testimony had changed. As for Bull's testimony on LaMere's confession, the court noted that LaMere testified at trial that Araiza had nothing to do with the murder and pleaded the Fifth when asked about his own involvement in the murder. The district court found that a jury did not believe LaMere the first time and would likely not believe him a second time. Thus, the district court concluded that the defense's newly discovered evidence was not likely to result in an acquittal. Araiza was then sentenced to life imprisonment with 35 years fixed for first-degree murder and to 20 years fixed for riot, with both sentences to be served concurrently.

In April 1990, LaMere was charged with first-degree murder for Holmes' death. Three months later, LaMere gave an interview to *The Idaho Statesman*. In a published article, he stated that he lied to Bull, he was innocent of murder, and he only confessed to help Araiza. All the same, he subsequently pleaded guilty to second-degree murder. LaMere again changed his story to the presentence investigator and stated he helped break into Holmes' cell but did not stab him. Following the imposition of LaMere's sentence, Araiza filed a Idaho Criminal Rule 35 motion, which was denied. He also pursued a direct appeal. On direct appeal, Araiza argued, among other things, that the district court erred in denying his motion for a new trial. This Court disagreed,

3

holding that the district court did not abuse its discretion in denying the motion for a new trial. *State v. Araiza*, 124 Idaho 82, 94, 856 P.2d 872, 884 (1993).

## C.      Petition for Post-Conviction Relief

On October 7, 2019, Araiza petitioned for post-conviction relief based on actual innocence and requested DNA and fingerprint testing. The district court appointed counsel and on February 21, 2020, Araiza filed an amended petition for post-conviction relief setting forth two claims: (1) a request for DNA testing under Idaho Code section 19-4902(b) on eleven items introduced at the trial; and (2) a request to vacate his conviction and sentence due to newly discovered evidence. Araiza supported his petition with an affidavit from LaMere, in which LaMere declared he killed Holmes, and that Araiza was not involved with the murder.

The State moved for summary disposition, asserting DNA testing was unwarranted because, even if the DNA on the items belonged to a third party, that evidence would not make it more probable than not that Araiza is innocent, and LaMere's affidavit did not provide "newly discovered evidence." Araiza filed no response or opposing materials. A hearing was held and the district court summarily dismissed Araiza's petition in September 2020.

In April 2021, Araiza moved for relief from the judgment under Idaho Rules of Civil Procedure 60(b)(1) and (b)(6). In his supporting declaration, Araiza stated that he had asked his attorney in October 2020 if the district court had ruled on his amended petition for post-conviction relief, but he did not receive a copy of the court's order until November 12, 2020—almost three weeks after the time to appeal had expired. Araiza also detailed the steps he took to determine whether he had missed any correspondence from his attorney through the prison mail system, culminating in a mailroom memorandum that he received on March 16, 2021, showing that he did not receive the order until November 12.

Araiza was appointed counsel who stipulated with the State to reenter the district court's judgment to resolve Araiza's Rule 60(b) motion. The district court reentered judgment on December 20, 2021, entitling the document as an "amended judgment." The same day, Araiza filed a notice of appeal from the reentered judgment. The Idaho Court of Appeals dismissed Araiza's appeal after concluding it was untimely. Araiza filed a petition for review, which this Court granted.

4

## II. STANDARDS OF REVIEW

"When addressing a petition for review, this Court will give 'serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court.' " *Rodriquez v. State*, 171 Idaho 634, 641, 524 P.3d 913, 920 (2023) (quoting *Marr v. State*, 163 Idaho 33, 36, 408 P.3d 31, 34 (2017)).

"The interpretation of the Idaho Rules of Civil Procedure is a matter of law over which this Court has free review." *Eby v. State*, 148 Idaho 731, 734, 228 P.3d 998, 1001 (2010) (citing *Canyon Cnty. Bd. of Equalization v. Amalgamated Sugar Co.*, 143 Idaho 58, 60, 137 P.3d 445, 447 (2006)). "The decision to grant or deny a motion under I.R.C.P. 60(b) is committed to the discretion of the trial court." *Id.* (citing *Pullin v. City of Kimberly*, 100 Idaho 34, 36, 592 P.2d 849, 851 (1979)).

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of four essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Gilbert v. Radnovich*, 171 Idaho 566, 572, 524 P.3d 397, 403 (2023) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## III. ANALYSIS

**A.      This Court lacks jurisdiction to consider Araiza's petition for post-conviction relief because the appeal was untimely.**

Before we can consider the merits of Araiza's petition for post-conviction relief, we must first evaluate whether this Court has jurisdiction to hear the appeal. "In Idaho, a timely notice of appeal . . . is a jurisdictional prerequisite to challenge a determination made by a lower court. Failure to timely file such a notice shall cause automatic dismissal of the issue on appeal." *Herndon v. City of Sandpoint*, 172 Idaho 228, ___, 531 P.3d 1125, 1147 (2023) (quoting *Hamilton v. Alpha Servs., LLC*, 158 Idaho 683, 693, 351 P.3d 611, 621 (2015)). To meet that jurisdictional prerequisite, "[a]ny appeal as a matter of right from the district court must be filed within forty-two days of the judgment." *State v. Wolfe*, 158 Idaho 55, 60, 343 P.3d 497, 502 (2015); *see also* I.A.R. 14 ("Any appeal . . . may be made . . . within 42 days from the date evidenced by the filing stamp of the clerk of the court on any judgment or order of the district court appealable as a matter of right in any civil or criminal action.").

5

Araiza's petition for post-conviction relief was summarily dismissed on September 11, 2020. Under the requirements of Idaho Appellate Rule 14, Araiza had until October 23, 2020, to file an appeal. Araiza did not meet this deadline because, as he alleges, his attorney did not inform him that his petition for post-conviction relief had been summarily dismissed until November 12, 2020—twenty days after the time to appeal had elapsed.

In April 2021, seven months after his petition was dismissed, and five months after being notified of the dismissal, Araiza filed a pro se motion to toll time and/or motion for relief from judgment. Araiza's motion relied on both Rule 60(b)(1) and Rule 60(b)(6) of the Idaho Rules of Civil Procedure. While "[a]n I.R.C.P. 60(b) motion may be used to obtain relief from a final judgment . . . it should not be used as a substitute for a timely appeal." *Maynard v. Nguyen*, 152 Idaho 724, 726, 274 P.3d 589, 591 (2011) (citing *Miller v. Haller*, 129 Idaho 345, 348, 924 P.2d 607, 610 (1996)). Araiza does not dispute that he did not timely appeal from the September 2020 judgment dismissing his post-conviction petition. Instead, Araiza contends that appellate jurisdiction is proper because he timely appealed from the amended judgment that was entered based on the stipulation of counsel.

"This Court has held that [Rule] 60(b)(1) and 60(b)(6) are mutually exclusive provisions, such that a ground for relief asserted, falling fairly under 60(b)(1), cannot be granted under 60(b)(6)." *Eden v. State*, 164 Idaho 241, 252, 429 P.3d 129, 140 (2018) (quoting *Eby v. State*, 148 Idaho 731, 736, 228 P.3d 998, 1003 (2010)). Rule 60(b)(1) permits the court to relieve a party from a final judgment based on "mistake, inadvertence, surprise, or excusable neglect[.]" I.R.C.P. 60(b)(1). "Mistake or inadvertence referred to in Rule 60(b)(1) applies primarily to errors or omissions committed by an attorney or by the court that are not apparent in the record." *Berg v. Kendall*, 147 Idaho 571, 576–77, 212 P.3d 1001, 1006–07 (2009) (citing *Silsby v. Kepner*, 140 Idaho 410, 411, 95 P.3d 28, 29 (2004)). "Any claim of mistake must be a mistake of fact and not a mistake of law." *Id.* at 577, 212 P.3d at 1007 (citing *Gro–Mor, Inc. v. Butts*, 109 Idaho 1020, 1023, 712 P.2d 721, 724 (Ct. App. 1985)). "The conduct constituting excusable neglect must be that which would be expected of a reasonably prudent person under the same circumstances." *Id.* (quoting *Suitts v. Nix*, 141 Idaho 706, 709, 117 P.3d 120, 123 (2005)). A party must file a motion under Rule 60(b)(1) "no more than 6 months after the entry of the judgment." I.R.C.P. 60(c).

Conversely, a motion requesting relief under Rule 60(b)(6) is based on "any other reason that justifies relief." I.R.C.P. 60(b)(6). The six-month limitation imposed under Rule 60(c) does

not apply to a motion filed under Rule 60(b)(6). I.R.C.P. 60(c). Instead, a petitioner must make a Rule 60(b)(6) motion within a "reasonable time." I.R.C.P. 60(c). "What constitutes a reasonable time depends upon the facts in each individual case." *Pizzuto v. State*, 168 Idaho 542, 552, 484 P.3d 823, 833 (2021) (quoting *Viafax Corp. v. Stuckenbrock*, 134 Idaho 65, 70, 995 P.2d 835, 840 (Ct. App. 2000)). "The question of what is a reasonable time under Rule 60(b) is a question of fact to be resolved by the trial court." *Id*. This Court has infrequently granted relief under Rule 60(b)(6). *Eden*, 164 Idaho at 252, 429 P.3d at 140.

Despite making his motion under "60(b)(1), *and/or* (b)(6)[,]" Araiza requested that the district court grant relief "by amending the date of entry to allow Petitioner to perfect an appeal *due to surprise and/or excusable neglect.*" (Emphasis added.) In Araiza's declaration in support of his motion for relief, he alleged that his attorney's

> dilatory actions not only *surprised* me, they left me devastated because I was relying on him to vigorously pursue my Post-Conviction Relief and act as my legal advisor/counselor. His abandonment left me in a precarious position because I believe I am actually innocent of the criminal charges that give rise to this action[.]

(Emphasis added.) Araiza's declaration also claimed that, while he received the order summarily dismissing his petition, his attorney neglected to provide "a cover letter, neither did he otherwise offer any explanation as to why it took him so long to inform me of the [c]ourt's [d]isposition; neither did he indicate whether he filed a [n]otice of [a]ppeal after the [o]rder was entered."

From the substance of Araiza's motion and declaration, these allegations place the motion squarely under Rule 60(b)(1). For example, Araiza's allegations that his attorney was dilatory in failing to timely inform him that his petition for post-conviction relief was summarily dismissed springs directly from a claim that his attorney committed an error or omission. Similar claims have previously been reviewed under Rule 60(b)(1). *See Berg*, 147 Idaho at 576–77, 212 P.3d at 1006–07 (citing *Silsby*, 140 Idaho at 411, 95 P.3d at 29). Thus, we hold that the only cognizable grounds to grant the relief Araiza seeks is governed by section (b)(1) of Rule 60—"mistake, inadvertence, surprise, or excusable neglect[.]"

Araiza attempts to distance his argument from the Rule 60(b)(1) grounds under which he made the motion for relief and filed the accompanying affidavit, advocating instead that "it is clear that the parties stipulated to the re-entry of the judgment as a remedy for [ineffective assistance of counsel] which, . . . is still an assertion of the deficient performance of counsel in failing to send Mr. Araiza a copy of the judgment." Araiza bolsters this argument by relying on *State v. Daly*, 161

Idaho 925, 393 P.3d 585 (2017). In that case, Daly timely appealed within forty-two days of the original judgment and his appeal was dismissed for failure to pay a fee. *Id*. at 927, 393 P.3d at 587. Following post-conviction proceedings, the district court found that Daly's attorneys were ineffective because they failed to notify Daly of the required fee to appeal. As a remedy, the district court reentered judgment in the criminal matter to allow Daly the ability to appeal. *Id*. Daly then appealed from the reentered judgment. On appeal, this Court held that it had jurisdiction to hear Daly's claims because

> in the post-conviction proceeding, the district court held that Daly's counsel had been ineffective in allowing his timely appeal to be dismissed and [reentered] judgment *nunc pro tunc* with the express purpose of allowing Daly to appeal from the original judgment. Thus, given the State's acknowledgement of this Court's jurisdiction under the circumstances stated, this contention is deemed waived.

*Id.* at 928, 393 P.3d at 588.

The facts in *Daly* are unhelpful to Araiza, even if we were to accept the fact that he and the State stipulated to reenter the judgment based on ineffective assistance of counsel. As we articulated earlier, Araiza's motion falls under Rule 60(b)(1). A stipulation between Araiza and the State on alternative grounds does not have the legal effect of recategorizing Araiza's motion. *See Ackerschott v. Mountain View Hosp., LLC*, 166 Idaho 223, 237, 457 P.3d 875, 889 (2020) (quoting *H & V Eng'g, Inc. v. Idaho State Bd. of Prof'l Engr's and Land Surveyors*, 113 Idaho 646, 648, 747 P.2d 55, 57 (1987) ("Parties cannot confer jurisdiction upon the court by stipulation, agreement, or estoppel.")). Thus, Rule 60(b)(6) is unavailable as a safety net when a motion and its grounds for relief fall squarely within Rule 60(b)(1). Counsels' attempts, even by stipulation, to revive jurisdiction for a Rule 60(b)(1) motion under the guise of Rule 60(b)(6) are futile in circumstances like those presented here.

Although Araiza focuses his motion as a Rule 60(b)(6) motion based on "ineffective assistance of counsel," the substance of his motion was based upon a claim of mistake, surprise, or excusable neglect, which falls squarely under Rule 60(b)(1). A Rule 60(b) motion based on subsection (1) must be filed "no more than 6 months after the entry of the judgment[.]" I.R.C.P. 60(c)(1). Araiza's motion was filed seven months after the district court's original order, which places it outside the time constraint identified in Rule 60(c)(1) for any grounds based on "mistake, inadvertence, surprise, or excusable neglect." I.R.C.P. 60(b)(1). Because Araiza's motion for relief from the district court's judgment under Rule 60(b)(1) was untimely, this Court does not have

8

jurisdiction to consider the merits of Araiza's petition for post-conviction relief. As such, Araiza's appeal is dismissed.

### IV. CONCLUSION

For the reasons above, we dismiss Araiza's appeal from the district court's summary dismissal of his petition for post-conviction relief.

Justices BRODY, MOELLER, ZAHN, and MEYER CONCUR.