Burke, J.
 

 This controversy arises out of a nationwide strike of the General Motors plants called by the United Automobile Workers on October 2, 1958. Although the nationwide strike was settled by agreement within 24 hours, the national settle
 
 *238
 
 ment allowed the various local unions to continue striking in support of negotiations on local issues.
 

 Claimants here are employees at five General Motors plants in New York State at which settlements of the strike continued by the various local unions were reached on different dates. The settlement and ratification dates are as follows:
 

 Plant
 

 Chevrolet — Tonawanda
 
 *
 

 Motor Plant ...................
 

 Foundry .......................
 

 Forge..........................
 

 Chevrolet —■ Buffalo ...............
 

 Harrison Radiator — Lockport .....
 

 " " —‘West Lockport
 

 " " —Buffalo .......
 

 Date of
 

 Local Agreement
 

 October 15 October 27 October 27 October 12 October 5 October 5 October 22
 

 Date of
 

 Local Ratification
 

 October 17 October 27 October 28 October 13 October 19 October 19 October 22
 

 Full employment in each plant was not resumed, however, until some time after the various settlements. In some instances recall was almost immediate but layoffs ensued thereafter because of lack of parts from plants still on strike. In some instances, recall itself was delayed and it was not until November 3 that full employment was restored throughout the nation. The instant claims are for unemployment benefits from the date of the local settlement in each claimant’s plant to the date when each claimant was recalled to employment.
 

 The controlling statute is subdivision 1 of section 592 of the New York Labor Law: “ Industrial controversy. The accumulation of benefit rights by a claimant shall be suspended during a period of seven consecutive weeks beginning with the day after he lost his employment because of a strike, lockout, or other industrial controversy in the establishment in which he was employed, except that benefit rights may be accumulated before the expiration of such seven weeks beginning with the day after such strike, lockout, or other industrial controversy was terminated.”
 

 It is appellants’ contention that the lifting of the seven-week suspension of benefits provided for in the last phrase of subdivision 1 of section 592 takes place on the date of each local settlement and ratification. The Unemployment Insurance
 
 *239
 
 Appeal Board so held. The Appellate Division reversed this determination, holding that the continued unemployment after each local settlement date until actual recall was not
 
 ‘
 
 ‘ involuntary ”, The court reasoned as follows: “ The facts in the instant case are unprecedented. General Motors is a far-flung organization with 124 plants, widely separated geographically throughout the United States, interdependent one upon the other, and each producing something essential to a final finished product. When some of the plants arc idle, others must of necessity be idle. Claimants must have been fully aware of this when they personally left their employment and initially participated in the strike. Their unemployment during the period for which they have granted benefits was the direct and inevitable consequence of the strike in which they joined. They are not innocent victims of a situation wholly beyond their control, and their unemployment may not be said to be involuntary.
 
 (Matter of Macheinsld
 
 [Corsi], 277 App. Div. 634 * * *)".
 

 The Appellate Division was correct insofar as it stated that the only issue is “ the very narrow question of when the strike or industrial controversy terminated within the meaning of subdivision 1 of section 592 ”, but erred, in our view, in attributing a vicarious voluntariness to the post-settlement unemployment on the ground that, when they commenced the strike, the claimants ought to have foreseen the consequences of idleness in some plants of an integrated industrial enterprise. The statute in question expressly limits such considerations to single “ establishments ”. There can be little doubt that, under our cases, delays caused by lack of parts and supplies from other idle plants are no part of the termination of an industrial controversy in an establishment that has settled its own controversy.
 

 The denial of benefits where unemployment results from a dispute “ in the establishment in which [the claimant] was employed ” is strictly limited by
 
 Matter of Ferrara (Catherwood)
 
 (10 N Y 2d 1) to the geographic location of the employment regardless of what the Appellate Division correctly recognized here as a highly integrated nationwide industry (see, also,
 
 Matter of Machcinski [Ford Motor
 
 Co.— Corsi], 277 App. Div. 634). In the face of the
 
 Ferrara
 
 case it cannot be said that the several plants involved in this case constitute a
 
 *240
 
 single establishment. The Appellate Division avoided the establishment concept and simply regarded participation in the nationwide strike to be an adequate predicate for a holding of voluntary unemployment until all plants were again in operation. While statutes in other States may be framed differently
 
 (United Steel Workers
 
 v.
 
 Board of Review,
 
 12 Utah 2d 136), in this State participation in a multi-establishment strike is not the criterion of an individual’s right to unemployment benefits. As the
 
 Ferrara
 
 case shows, nonparticipants within a struck establishment are subject to the same suspension of benefits as those who are engaged in the industrial controversy. So, conversely, employees in an establishment in which no dispute presently exists, even though they were participants in the initial multi-plant controversy, are not denied benefits where their unemployment is traceable solely to a controversy in another establishment. We hold that unemployment in one establishment that is due to lack of essential supplies or parts from some other establishment idle because of an industrial controversy qualifies for benefits under subdivision 1 of section 592 if the controversy in the former is terminated.
 

 The second branch of this appeal questions the Appellate Division’s affirmance of the Unemployment Insurance Appeal Board’s determination that the motor plant, forge and foundry at Tonawanda was one establishment. The controlling decision is
 
 Matter of Ferrara (Catherwood)
 
 (10 N Y 2d 1,
 
 supra)
 
 which held that geographic unity is the primary and ordinarily decisive factor in determining the existence of an establishment under subdivision 1 of section 592. It is simply a question of applying the standard to the physical plant at Tonawanda. This seems to us to be the sort of question as to which the administrator’s choice should be given great weight. Although the three divisions are represented by different local unions of the United Automobile Workers, with different collective bargaining agreements, the facilities occupy a single tract of about 150 acres and are surrounded by a single 6-foot steel fence. Each has separate personnel records and each has a separate cafeteria. On the other hand, they are served by a single power house, water pumping station, sewage disposal, electric and compressed air facilities. The administrative structure seems to tend to separateness while physically and spatially it is
 
 *241
 
 more of a unit. Unless we are to further refine the
 
 Ferrara
 
 standard as a matter of law—and there would be great difficulty in generalizing further refinements—we must leave the Appeal Board’s determination undisturbed.
 

 Lastly, respondent argues that the individual strike settlements cannot be regarded as terminating the strikes in each establishment because of paragraph 118 of the national collective bargaining agreement between General Motors and the International Auto Workers, which states: “ The Union has requested this National Agreement in place of independent agreements for each bargaining unit covered hereby. Accordingly an authorized strike in one bargaining unit under this Agreement which results in an interruption of the flow of material or services to operations in any other bargaining unit under this Agreement, will be considered an authorized strike in any such affected bargaining unit.” It is argued that this provision means that the strike settlements that were reached at each establishment were without effect in settling the strike at such establishments so long as the interruption in the flow of essential parts held up actual operation. Cases such as
 
 Ford Motor Co.
 
 v.
 
 Huffman
 
 (345 U. S. 330) and
 
 Allis-Chalmers Mfg. Co.
 
 v.
 
 National Labor Relations Bd.
 
 (213 F. 2d 374) are cited to show how the provisions of a collective bargaining agreement may override inconsistent mandates of law. For instance, in
 
 Huffman,
 
 an agreement dealing with veterans’ seniority rights was held binding even though it derogated from the statutory rights of returning veterans as set forth in Federal law.
 

 Assuming
 
 arguendo
 
 that the provision was intended to have the effect now argued by respondent, it cannot do so under our law. Cases dealing with a conflict between a contract and a statute covering conditions of employment are not controlling. The statute may there be rightly regarded as applicable only in the absence of a contrary agreement. Here, however, conditions of employment are not involved. We are asked to hold that the benefits otherwise due the unemployed were bargained away. In respect of social legislation designed to benefit those whom the Legislature deems in need of assistance, it is asking a great deal to have us displace the legislative determination of the needy class to conform to a prior private agreement —
 
 *242
 
 even though voluntarily entered into by those now in need of help. Our law, defining the class entitled to benefits and the conditions under which they are due, expressly recites that benefits shall be accumulated before the expiration of seven weeks “beginning with the day after such strike, lockout, or other industrial controversy was terminated ’ ’; and ‘‘ terminated ”, under our statute, means an actual settlement within a given establishment, regardless of what the national collective bargaining agreement considers to be an “ authorized strike ” in such “affected bargaining unit.” The sustenance due the unemployed is not a fit subject of private waiver, whether through collective bargaining or otherwise.
 

 To summarize, we believe that, where an industrial dispute is in fact settled by agreement within the unit defined by statute as an establishment, the policy of the statute is called into play notwithstanding the national agreement’s characterization of the continued work stoppage as “an authorized strike ”. The stoppage is in fact due to disputes at other establishments, and labels notwithstanding, that sort of reason for unemployment is not regarded by our law as a sufficient cause for denying benefits.-
 

 The constitutional argument raised by respondent is quite without merit. Laws pre-existing the formation of a contract and limiting its effectiveness do not “impair its obligation” within the constitutional prohibition
 
 (West Const Hotel Co. v. Parrish,
 
 300 U. S. 379). As to the argument under the supremacy clause (U. S. Const., art. VI, § 2) that section 592 invalidly regulates interstate commerce, it is sufficient answer to say that the constitutionality of our unemployment insurance law has been upheld
 
 (Chamberlin, Inc.,
 
 v.
 
 Andrews,
 
 159 Misc. 124, mod. 271 N. Y. 1, affd. 299 U. S. 515;
 
 Standard Dredging Co.
 
 v.
 
 Murphy,
 
 319 U. S. 306) and the power to provide for payment of benefits and taxation of employers must carry with it the power to regulate, according to our own lights, eligibility for payments.
 

 The order of the Appellate Division should be modified by reversing so much thereof as reversed the determination of the Unemployment Insurance Appeal Board' and the determination of the board reinstated, with costs in this court and in the Appellate Division to the Industrial Commissioner against
 
 *243
 
 General Motors Corporation, and, as so modified, the order should be affirmed.
 

 Chief Judge Desmond and Judges Dye, Fuld and Scileppi concur with Judge Burke; Judge Van Voorhis dissents and votes to affirm; Judge Bergan taking no part.
 

 Order modified, etc.
 

 *
 

 The Tonawanda settlements are charted as a single establishment for reasons to be stated later.