Jasen, J.
 

 Richard Green, who had been employed by Republic Steel Corporation as a bricklayer for nearly nine years, was laid off on January 26, 1973, due to a diminished need for masonry services. At the time of the layoff, Green was a Grade 17 employee and was earning $4.92 per hour. As a member of the United Steelworkers’ Union, he was subject to the union’s national collective bargaining agreement with Republic, as well as to a local supplemental agreement. The local supplement contained a "Plant Waiver” clause. This provision purported to permit the most senior employees to refuse to accept alternative work with Republic outside of their normal departments and yet continue to receive unemployment benefits. However, the agreement provided that if Republic was not able to fill all the vacant slots with less senior workers, then the employer could compel the more senior employees to accept the jobs offered or else lose their unemployment benefits. On January 31, 1973, five days after the layoff, a representative of Republic contacted Green and informed him that the company had work available for him as a Grade 3 laborer, at a pay rate of $3.51 per hour.
 
 *
 
 Green refused to accept the proffered employment on the ground that it was unsuitable. He did return to work for Republic as a bricklayer on March 18, but was laid off again one week later. Thereafter he found other employment as a bricklayer.
 

 A Labor Department referee determined that Green was entitled to unemployment benefits for the period he was out of work. The Unemployment Insurance Appeal Board adopted the referee’s findings and confirmed the award. The Appellate Division, with two Justices dissenting, affirmed the appeal board’s decision.
 

 Preliminarily, we are called upon to decide whether it is permissible for an employer, pursuant to the terms of the collective bargaining agreement, to require a temporarily laid-off employee to accept any work that he is "physically capable
 
 *558
 
 of performing” or else forfeit unemployment compensation benefits.
 

 Both the national and supplemental local agreements contained provisions for temporary employment in another department when there was not sufficient work in an employee’s regular department. These provisions were implemented by the operation and maintenance of seniority pools. Rule 18 of the local agreement contains a "Plant Waiver” clause which applies to employees who are in a seniority pool because of a temporary layoff and reads as follows: "Employees in the pool will be required to accept any work offered, regardless of the location or the expected number of days involved. Failure to do so will result in the loss of U.C. and SUB for the number of days of work available.”
 

 The thrust of the "Plant Waiver” provision, argues the employer, is that unemployment benefits, compensation and supplementary benefits would be withheld as a result of noncompliance with the contractual terms of the collective bargaining agreement. The employer submits that the State agency is precluded from interfering with the contractual agreement when the parties have freely and legally agreed to exclude unemployment compensation, in certain situations, as a condition of employment.
 

 While we would agree that, generally, outside interference with the substantive terms of a collective bargaining agreement has not been approved by the courts, public policy proscribes any provision of the contract that is in violation of statute.
 
 (Crowe v Liquid Carbonic Co.,
 
 208 NY 396, 402.)
 

 Subdivision 1 of section 595 of the Labor Law provides that "[n]o agreement by an employee to waive his rights under [the unemployment insurance] article shall be valid.” The statute, recognizing the susceptibility of the jobless to economic coercion, voids any attempt to strip the unemployed of their statutory compensation. Indeed, our court has previously stated that "[t]he sustenance due the unemployed is not a fit subject of private waiver, whether through collective bargaining or otherwise.”
 
 (Matter of George [Catherwood],
 
 14 NY2d 234, 242.) The agreement purports to condition the right to receive compensation on the acceptance of alternative employment. The imposition of a condition upon the receipt of unemployment benefits necessarily imports a waiver of benefits in the event that the condition is not fulfilled. Thus, in this case, to deny Richard Green his unemployment compensa
 
 *559
 
 tion would, in effect, enforce a waiver of benefits clause in the agreement. Such a result would conflict with the purpose of the legislation which was designed to benefit those in need of assistance.
 

 Holding as we do, that an employer cannot enforce a provision of a collective bargaining agreement denying a claimant unemployment insurance benefits due under law, we turn to the main issue on this appeal, whether there is substantial evidence to support the decision of the appeal board that claimant, a bricklayer, had good cause to refuse employment as a laborer on the ground that the latter employment was not one "for which he is reasonably fitted by training and experienqe”.
 

 Subdivision 2 of section 593 of the Labor Law provides that an employee who refuses to accept an offer of employment for which he is reasonably fitted by training and experience is not entitled to unemployment benefits. Republic would have us overturn the administrative finding that Richard Green, a bricklayer, was not reasonably suited to perform the functions of a laborer. We decline to do so. The rather limited judicial review accorded this kind of determination precludes us from substituting our judgment for that rendered by the officials directly responsible for the administration of State labor laws, provided, of course, that their conclusion is supported by substantial evidence.
 

 The question of whether a claimant has refused alternative employment with good cause is basically a question of fact.
 
 (Matter of Spack [Corsi],
 
 305 NY 753;
 
 Matter of Linker [Catherwood],
 
 27 AD2d 884;
 
 Matter of Almstead [Catherwood],
 
 32 AD2d 860.) If there is substantial evidence in the record, the administrative determination is both rational and final (Labor Law, § 623;
 
 Matter of Marsh [Catherwood],
 
 13 NY2d 235, 239;
 
 Matter of Tucker [Lubin],
 
 8 NY2d 1145;
 
 Matter of Lipschitz [Lubin],
 
 7 AD2d 777) and the court’s function is fulfilled.
 

 Our review of the record reveals there was ample evidence to support the findings of the appeal board. During the course of his employment with Republic, Green never worked in any capacity except that of bricklayer. In order to satisfactorily complete his assigned tasks, Green was required to exercise a higher degree of skill and discretion than a laborer ordinarily would. The respective duties and tasks are substantially different. A final factor is the existence of a 15% wage differential.
 

 Appellant’s reliance on
 
 Matter of Bus (Bethlehem Steel
 
 
 *560
 

 Corp.
 
 —Catherwood) (37 AD2d 98, affd 32 NY2d 955) is misplaced. In the
 
 Bus
 
 case, the claimants had advanced to positions which were rated above those at which they commenced their employment. As a result of work force reductions, they lost their jobs in their own departments and were offered jobs in other departments. Most of the proffered jobs were as laborers. The principal reason the claimants refused to take the jobs was that there was a substantial difference in pay. The Appellate Division held, and we agreed, that a reduction in pay is, not by itself, controlling. However, here Green faced more than a loss of pay. Unlike the claimants in
 
 Bus,
 
 Green had never worked at the less-skilled job that Republic had offered him. The
 
 Bus
 
 claimants, because of their prior employment at the entry-level jobs, were fitted by training and experience to return to those tasks. In this case, the administrative officials could reasonably find, as they did, that Green was not so well-suited to the alternative job.
 

 The order of the Appellate Division should be affirmed.
 

 Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler and Fuchsberg concur; Judge Cooke taking no part.
 

 Order affirmed, with costs.
 

 *
 

 However, the Earnings Protection Plan, in effect at the time, provided that the maximum amount of reduction in wages that an employee could suffer when transferred to a different job would be 15% of his regular rate of earnings. Thus, claimant would have earned $4.18 per hour in the laboring job.