■ In the Matter of the Claim of MARINA DIAZ et al., Respondents. NEW YORK CITY DEPARTMENT OF PERSONNEL, Appellant. PHILIP ROSS, as Industrial Commissioner, Respondent. — Appeal from a decision of the Unemployment Insurance Appeal Board, filed March 27, 1980, which affirmed the decision of an Administrative Law Judge sustaining initial determinations of the Industrial Commissioner ruling claimants eligible to receive benefits without disqualifying conditions. All eight claimants involved in this appeal

were employed by the City of New York as school crossing guards. Their positions were scheduled to end on June 27, 1979, but each was advised, by letter, that "continuing work is available for you at a comparable salary after your last day of work *** as a monitor for Civil Service examinations", and each was asked to report on June 30, 1979. All expressly declined this proposition; none reported for the assignment and, as relevant to this appeal, each filed a claim seeking unemployment insurance benefits for periods after June 30, 1979. Initial determinations of eligibility without disqualifying conditions were made and, following a hearing, were upheld over the city's objections that claimants had refused offers of employment without good cause (Labor Law, § 593, subd 2) or, alternatively, had voluntarily separated themselves from employment without good cause (Labor Law, § 593, subd 1). An Administrative Law Judge rejected the first contention based on our decision in *Matter of Foscarinis (Corsi)* (284 App Div 476) and was of the view that claimants had not voluntarily left their employment because the monitor post represented an offer of new employment after termination. The board adopted the findings and opinion of the hearing officer as its decision and this appeal by the city ensued. Initially, we note that claimants' eligibility for benefits is not at issue. The city did not specifically contest their ability and willingness to work and their continuing availability for suitable employment after June 30, 1979 was not explored in these proceedings (see Labor Law, § 591, subds 1, 2). Thus, assuming claimants to be otherwise eligible, the question presented is whether they were subject to disqualification. The pertinent statute (Labor Law, § 593) lists four possible grounds for disqualification. The two which the city maintains should defeat claimants' applications parallel one another in providing that no days of total unemployment shall be deemed to occur if claimants, without good cause, have either voluntarily separated from their last employment (subd 1) or refused to accept an offer of employment for which they are reasonably fitted by training and experience (subd 2), until such time as they have subsequently worked not less than three days in each of four weeks or earned at least $200. The latter disqualification cannot apply when, as here, an employment offer *precedes* a claim for benefits for, at that time, the unemployed worker is not then a "claimant" within the scope of the statute *(Matter of Foscarinis [Corsi], 284 App Div 476, supra; see Matter of Schurmann [Catherwood], 16 AD2d 311)*. While the city points out that later decisions have seemingly ignored this principle, at least when the offer is made by the worker's last employer (see *Matter of Green [Republic Steel Corp. — Levine], 37 NY2d 554; Matter of Bus [Bethlehem Steel Corp. — Catherwood], 37 AD2d 98, affd 32 NY2d 955)*, those cases do not imply *Foscarinis* has been overruled for it is entirely possible, even likely, that the timing of the offers in relation to the claims was never raised by the parties or the board. Accordingly, we agree that claimants' refusals to serve as monitors on June 30, 1979, before they sought benefits, did not subject them to disqualification under subdivision 2 of section 593 of the Labor Law (cf. *Matter of Foy [Ross], 79 AD2d 842*). More difficult to resolve is whether claimants should have been disqualified under subdivision 1 of section 593 of the Labor Law for voluntarily leaving their employment without good cause. It would be illogical and contrary to the intent of the unemployment insurance law to interpret that subdivision in a manner benefiting workers who prematurely decline uninterrupted employment with the same employer in a slightly altered capacity while insisting that actual claimants take suitable employment from another or face disqualification. The hearing officer's conclusion that claimants' employment simply

ended on June 27, 1979 at the close of the school year is myopic for the city had made it plain that some form of work existed beyond that date. Technical formalities or brief intervals between the "old" and "new" positions merely beg the pivotal question: did claimants, aware of some continuing opportunity for work, effectively shorten their employment in a voluntary fashion? Although the instant decision stresses that the city's letter did not fully recite the terms and conditions which attached to the monitor post, we do not believe that such observations are enough to support a negative answer. The letter cannot be dismissed as a vague indication that some work of an unspecified character might be available at some indefinite future time; it directly requested claimants' services for a genuine job beginning on a certain date. Under these circumstances, if ambiguities existed, it was for claimants to make inquiry concerning the nature and duration of the position offered. It may have been unsuitable for any number of reasons or they may have possessed compelling personal grounds for rejecting the tender, factors upon which no findings have been made and on which we express no opinion, but it would be erroneous to suppose they could thoughtlessly disregard the possibility of steady work without adverse consequence. Since the present records contain an inadequate foundation to justify the conclusion drawn by the board, and since it may become necessary to examine subsidiary issues if it is determined that claimants acted voluntarily in causing their separation from employment, the decision must be reversed and the matter remitted to the board for further proceedings. Decision reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith. Mahoney, P.J., Kane, Main and Yesawich, Jr., JJ., concur.

Mikoll, J., dissents and votes to affirm in the following memorandum. Mikoll, J. (dissenting). I respectfully dissent. There is substantial evidence in the record to support the finding of the board. The decision should be affirmed.