[No. 4766–1–III.   Division Three.   March 8, 1983.]

ESKAY PLASTICS, LTD., *Respondent,* v. KEN
CHAPPELL, ET AL, *Appellants.*

*Edward J. Goss* and *Goss, Moe & Sampson,* for appellants.

*Joel C. McCormick III* and *Winston & Cashatt,* for respondent.

McINTURFF, J.—Ken Chappell appeals from a judgment ordering him to pay the balance due on a contract, minus his damages, plus interest. He raises three issues, all of which concern his liability for interest at the rate of 1½ percent per month.

In May 1974, Mr. Chappell, d/b/a Ken Chappell Marine Distributors, placed a telephone order to Eskay Plastics, Ltd. (Eskay), a Quebec corporation, for 51 pedal boats and one kayak. At the time, the parties did not discuss terms of payment. However, when Eskay shipped the boats the following month, it sent Mr. Chappell an invoice specifying a total due of $14,114, and providing: "1½ % INTEREST WILL BE CHARGED ON OVERDUE ACCOUNTS". Mr. Chappell never communicated any objection to this interest rate.

Eskay received the following payments from Mr. Chappell:

| AMOUNT PAID | DATES RECEIVED BY ESKAY | BALANCE DUE |
|---|---|---|
| $410 | May 7, 1975 | $13,704 |
| 4,000 | June 4, 1975 | 9,704 |
| 2,000 | June 9, 1975 | 7,704 |
| 2,000 | June 11, 1975 | 5,704 |

When no further payments were made, Eskay brought this action for the balance. Mr. Chappell counterclaimed for his costs of repairing the boats, which he alleged were defective.

At trial, the parties stipulated to the above facts, but asked the court to determine (1) the legal effect of the interest term contained in the invoice, and (2) the amount, if any, Mr. Chappell was entitled to set off from the balance due on the contract. On appeal, Mr. Chappell assigns error

to the court's conclusions regarding interest, *i.e.*, the invoice term was agreed upon by the parties, the rate was not usurious, and Eskay was entitled to the same rate as post–judgment interest.

First, Mr. Chappell points out that post–judgment interest is limited by RCW 4.56.110[1] to a maximum annual rate of 10 percent. Eskay urges this court to disregard the statutory maximum and apply the contract rate. It argues the statute impairs parties' contractual obligations, deprives creditors of property without due process, and creates an economic incentive for debtors to breach contracts. We are not persuaded by Eskay's arguments.

A contract is not considered impaired by a statute in force when the contract was made, for it is presumed the contract was made in contemplation of existing law. *Minish v. Hanson*, 64 Wn.2d 113, 115, 390 P.2d 704 (1964); *Tri–Financial Corp. v. Department of Rev.*, 6 Wn. App. 637, 643, 495 P.2d 690, 65 A.L.R.3d 1174 (1972). Here, RCW 4.56.110 had been in effect in some form since 1895. The provision for an annual maximum rate of 10 percent had remained unchanged since 1899. The fact the statute has no operative effect until after the contract is made, *i.e.*, when judgment is entered, does not aid Eskay. The presumption that the contract is made in contemplation of existing laws includes those laws which may come into effect if default occurs.

To support its argument that RCW 4.56.110 violates due process, Eskay cites the general rule that legislatures acting under the guise of the police power may not impose unnecessary and unreasonable restrictions on the use of private property. *See, e.g., State v. Spino*, 61 Wn.2d 246, 250, 377

---

[1]Former RCW 4.56.110(1) provided:

Judgments founded on written contracts, providing for the payment of interest until paid at a specified rate, shall bear interest at the rate specified in such contracts, not in any case, however, to exceed ten percent per annum:
. . .

Since this case was tried, the statute has been amended to increase the maximum rate to 12 percent per annum. Laws of 1980, ch. 94, § 5.

P.2d 868 (1963). We find no violation of due process here. While the Legislature has legalized higher interest rates in private agreements, it reasonably can refuse to permit those same rates when the power of the State, through judgment and execution, is used to collect amounts due under the contract. The State has a legitimate concern in seeing that the decisions of its courts are obeyed. This concern is interfered with when high post–judgment interest rates operate to reduce the number of people who can honor the judgments entered against them.

Nor can we be persuaded by Eskay's argument that RCW 4.56.110 encourages debtors to default on their obligations by rewarding them with a lower interest rate if a judgment is entered against them. This argument may be true, but it is for the Legislature, not the courts, to determine whether the public is better served by higher post–judgment interest rates. The role of the court does not include a duty to review the wisdom of otherwise lawful legislative acts. *State Pub. Employees' Bd. v. Cook,* 88 Wn.2d 200, 206, 559 P.2d 991 (1977), *adhered to on rehearing,* 90 Wn.2d 89, 579 P.2d 359 (1978).

Consequently, the judgment herein is modified to provide for post–judgment interest not to exceed 10 percent per annum. *American Linen Supply Co. v. Nursing Home Bldg. Corp.,* 15 Wn. App. 757, 769, 551 P.2d 1038 (1976).

Second, Mr. Chappell challenges the trial court's conclusion that the interest provision in the invoice became an additional term of the contract. The court based this conclusion on its finding that Mr. Chappell had never objected to the interest term. Mr. Chappell does not dispute the finding but argues it is insufficient to support the court's conclusion. We disagree with Mr. Chappell.

RCW 62A.2–207(2) provides:

> The additional terms are to be construed as proposals for addition to the contract. *Between merchants such terms become part of the contract unless*:
>
> (a) The offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(Italics ours.) The statute is unambiguous. When the parties are both merchants, the additional term becomes a part of the contract unless one of the conditions set forth in subsections (a)–(c) is proven. We hold that the burden of proof of the existence of these conditions rests on the party who will benefit therefrom, in this case, Mr. Chappell. Since Mr. Chappell did not produce evidence that his offer expressly limited acceptance to its terms or that the interest rate amounted to a material alteration of the contract, he failed in his burden of proof. In the absence of such proof, the court properly concluded the interest term became part of the agreement.[2]

Third, Mr. Chappell contends the interest rate of 1½ percent per month is usurious. He relies in part on *Whitaker v. Spiegel, Inc.*, 95 Wn.2d 661, 670, 623 P.2d 1147, 637 P.2d 235 (1981), which held a 19.8 percent service charge rate on purchases made under a revolving charge agreement violated the usury law.[3] The court overruled prior cases which held that conditional installment sales did not constitute a loan or forbearance—one of the requisite elements of usury.

---

[2]Mr. Chappell also argues he cannot be bound to the interest term because (1) the interest rate is in small, inconspicuous type at the bottom of the invoice, and (2) Eskay's failure to bill him for interest until after litigation commenced evidences an intent not to make the interest provision a term of the contract. We disagree with Mr. Chappell's characterization of the interest clause as inconspicuous. To the contrary, it is noticeable. As to Eskay's initial failure to bill for interest, that conduct by itself does not prove a lack of intent to include the interest provision as a term of the contract. Moreover, we note that Mr. Chappell did not make either of these arguments to the trial court.

[3]RCW 19.52.020 provided in part: "[N]o person shall directly or indirectly take or receive in money . . . any greater interest . . . for the loan or forbearance of any money . . . than twelve percent per annum".

We need not decide whether *Spiegel's* substantive holding extends to the facts here. In *Spiegel,* the court gave its decision prospective application only because it was concerned about the impact of the decision on presently existing agreements entered into over the years in reliance on prior cases. *Spiegel,* at 667. Eskay falls within the class the court in *Spiegel* sought to protect. Its contract with Chappell was made nearly 7 years before *Spiegel* was decided, and the judgment on the contract was entered before *Spiegel* was filed. Consequently, *Spiegel,* even if applicable to cases of this nature, does not overturn the trial court's conclusion that the interest rate of 1½ percent per month was permissible.

■ The trial court relied on *Union Bank v. Kruger,* 1 Wn. App. 622, 626, 463 P.2d 273 (1969), which states:

> The general rule is that a provision in a note for the payment of money by which the debtor agrees to pay, after maturity, interest at a higher rate than that which is permitted by law, is not sufficient to render the note usurious, provided the parties concerned act in good faith and do not intend to evade the usury law.

Mr. Chappell, the party seeking to establish the defense of usury, had the burden of proof. *Liebergesell v. Evans,* 93 Wn.2d 881, 887, 613 P.2d 1170 (1980). Yet he offered no evidence that the parties intended to evade the usury law or that they acted other than in good faith.

Instead, Mr. Chappell now attempts to distinguish *Kruger* on the basis the court there relied heavily on the fact the borrower could avoid interest altogether if he paid the principal by a certain date. He argues that the record is silent as to whether he had a similar opportunity. We disagree. The invoice specified the terms of payment as "2%; 10: Net; 30." The trial court interpreted these terms to mean the obligation matured in 30 days, with interest accruing only if payment was not made by that time. This interpretation is reasonable in light of the interest clause which called for interest only on "overdue" accounts.

The judgment, as modified by the 10 percent per annum post–judgment interest limitation, is affirmed.

ROE, C.J., and GREEN, J., concur.