[No. 57625-4.   En Banc.   December 24, 1992.]

SHORELINE COMMUNITY COLLEGE DISTRICT NO. 7, *Petitioner*, v. THE EMPLOYMENT SECURITY DEPARTMENT, ET AL, *Respondents*.

396

*Kenneth O. Eikenberry, Attorney General, Richard M. Montecucco, Senior Assistant,* and *Edwin J. McCullough, Jr.,* and *Brenda J. Little, Assistants,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *M. Geoffrey G. Jones, Assistant,* for respondents.

JOHNSON, J. — Shoreline Community College District 7 (Shoreline) seeks review of the Court of Appeals opinion affirming the administrative determination that Richard

Pelto qualified for unemployment compensation. We affirm the Court of Appeals.

Shoreline employed Richard Pelto as a part-time, salaried English instructor in 1986. Pelto taught an English 102 class during the winter and spring 1986 academic quarters. In the fall 1986 quarter, he taught both English 101 and English 102. Pelto thus taught a total of four introductory college English classes at Shoreline in 1986. During this time, neither Shoreline nor Pelto kept records of the number of hours Pelto worked in fulfilling his teaching duties to Shoreline. Pelto did not have any other employment in 1986.

Pelto's employment contract with Shoreline expired at the end of each academic quarter. Shoreline renewed Pelto's contract at the end of the winter and spring quarters, but not at the end of the fall quarter. Pelto was thus not rehired in 1987. He applied for unemployment compensation benefits in April 1987.

An individual must work at least 680 hours during his or her "base year" in order to qualify for unemployment benefits. RCW 50.04.030. For the purposes of this case, Pelto's "base year" is the 1986 calendar year. Employers are required to make quarterly reports to the Employment Security Department (Department) regarding the number of hours worked by each of their employees. RCW 50.12.070; WAC 192-16-002. Shoreline reported to the Department that Pelto had worked 513 hours during 1986, or 167 hours less than the minimum number required for Pelto to qualify for unemployment compensation. As a result, the Department initially denied Pelto's application for benefits.

Pelto appealed this denial of benefits. On June 15, 1987, an administrative law judge (ALJ) conducted a hearing on whether Shoreline had correctly reported Pelto's hours to the Department. Pelto testified at this hearing that he worked regular hours while he was teaching, and that during the winter and spring quarters, he had worked a minimum of 4 hours per day for a total of 440 hours. He stated that he had worked a minimum of 6 hours per day for a

total of 330 hours during the fall quarter when he taught both English 101 and English 102. Pelto thus testified that he had worked a total of at least 770 hours for Shoreline in 1986, and during this time he received a total salary of $6,807.90.

Pelto testified at the hearing that he would arrive on campus at least 1 hour before class to review teaching materials and prepare for class. Each class he taught carried 5 credit hours, and met 1 hour per day, 5 times per week during the academic quarter. He testified that he maintained regular office hours to give students additional help with their course work, as well as feedback on their progress. As proof of these hours, Pelto placed into the record copies of evaluations made by his students regarding Pelto's teaching performance. These evaluations indicate that Pelto's students generally had a high level of satisfaction with Pelto's teaching performance, and in particular with Pelto's availability when they needed additional help with their assignments outside of the classroom.

As additional proof of his hours, Pelto placed in the record copies of syllabi for his English 101 and English 102 classes. These documents reflect that English 101 and English 102 are introductory English courses designed to develop and improve the basic writing skills of students. In order to achieve this purpose, students in these classes were given a number of writing assignments of varying complexity, including assignments to rewrite or revise their work. Pelto corrected and graded these assignments. Pelto also gave his students reading assignments for the purposes of classroom discussion, various written exercises from assigned texts, and a midterm and final exam.

In addition to the 770 hours he worked in teaching his students, Pelto testified that he also spent approximately 30 hours teaching himself to use a WordPerfect software program, as this program was to be used in teaching English during the winter 1987 academic quarter. He also spent about 10 hours attending faculty meetings at which his

attendance was strongly recommended but not required, and about 30 hours preparing a presentation to the state humanities association with two other Shoreline instructors.

Shoreline's personnel director, Diann Youngquist, represented Shoreline at the hearing. Youngquist did not challenge any of Pelto's testimony or supporting documentation regarding the number of hours he had worked in fulfilling his contractual teaching duties to Shoreline. She argued instead that Shoreline had properly reported Pelto's hours based on a formula contained in a collective bargaining agreement between the college and the Shoreline Community College Federation of Teachers. The collective bargaining agreement has not been placed in the record. However, Youngquist established through her testimony that she had personally negotiated the formula with the union several years prior to the time of the hearing.

Youngquist testified that the formula for determining a part-time, salaried instructor's reportable hours is as follows: 35 (hours per week) x 11 (weeks in a quarter) x (percentage of a full-time instructor's credit hours taught) = number of hours reported to the Department. For the purposes of the formula, a full-time instructor was estimated as working 35 hours per week for 11 weeks during the academic quarter. The record reflects that this 35 hours per week figure does not represent any *actual* weekly expectation for full-time faculty members. The figure was chosen in recognition of the fact that part-time faculty are not expected to participate in "governance and other divisional duties" expected of full-time faculty members. A full-time teaching load in the English Department is considered to be 15 credit hours. Each 5 credit hour class Pelto taught was thus considered to be one-third or 33 percent of a full-time load. Shoreline applied this formula to Pelto, determined that Pelto worked 513 reportable hours, and accordingly reported this figure to the Department.

The number of hours derived through this formula does not reflect the actual number of hours any part-time, salaried

instructor may work in fulfilling his or her contractual teaching duties. Youngquist testified at the hearing that:

> there may well be times when the actual hours that a person spends, because of the nature either of their assignment or the nature of the individual, is going to mean that that person put in more hours, or perhaps less hours [than are reported to the Department by means of the formula].

Some teaching assignments will thus require more hours to complete than others. Application of the formula in any given case may accordingly result in either underreporting or overreporting to the Department the number of hours an instructor actually worked in completing his or her teaching assignment.

The record also indicates that the formula was not established to delineate or limit the number of hours a part-time, salaried instructor is required or expected to work in fulfillment of his or her contractual teaching duties. Youngquist testified that Shoreline does not place expectations on the number of hours a part-time instructor will spend in performing such activities as preparing for class, correcting assignments, and grading exams. The formula thus places limitations on the number of hours which are reported to the Department, but no limitation on the number of hours an instructor is actually required or expected to work in completing his or her particular teaching assignment.

The ALJ affirmed the denial of benefits. The ALJ concluded that the formula was an appropriate method for reporting Pelto's hours regardless of the number of hours Pelto may have actually worked in fulfillment of his contractual teaching duties.

Pelto petitioned the Commissioner of the Employment Security Department for review of the ALJ's ruling. The Commissioner reviewed the record and reversed the ALJ's ruling. The Commissioner determined that Pelto qualified for benefits because the record supported Pelto's contention that he had worked at least 770 hours in fulfilling his contractual teaching duties to Shoreline. The Commissioner noted in his

decision that Shoreline had conceded that the number of hours an individual faculty member may spend fulfilling his or her contractual duties will vary with the type of courses he or she is required by contract to teach.

Shoreline petitioned the Superior Court for Thurston County for review of the Commissioner's ruling. The Superior Court reviewed the record and affirmed the Commissioner's ruling. The Court of Appeals affirmed the Superior Court. This court granted Shoreline's petition for review of the Court of Appeals determination.

## I

We begin by determining the appropriate standard of review. The Employment Security Act (Act) allows for judicial review of the Commissioner's decision "only in accordance with the procedural requirements of RCW 34.04.130." Former RCW 50.32.120; *Macey v. Department of Empl. Sec.,* 110 Wn.2d 308, 312, 752 P.2d 372 (1988). The Legislature amended RCW 34.04.130, and the statute is now recodified at RCW 34.05.570. Laws of 1988, ch. 288, §§ 516, 706; Laws of 1989, ch. 175, § 27. Because this amendment did not become effective until July 1, 1989, former RCW 34.04.130 applies to this case.

■ Shoreline raises an issue of law in arguing that the formula contained in the collective bargaining agreement controls over provisions in the Employment Security Act for determining whether Pelto qualified for receiving unemployment compensation. Under former RCW 34.04.130(6)(d), a court may reverse an agency's decision where the decision is affected by an error of law and the petitioner's substantial rights may have been prejudiced as a result. Laws of 1967, ch. 237, § 6. Under this standard, the reviewing court may substitute its judgment for that of the administrative body; the court will accord substantial weight, however, to the agency's view of the law if it falls within the agency's expertise in that special field of law. *Macey,* at 313. We accordingly review this case under the error of law standard.

## II

Under the Employment Security Act, an individual cannot qualify for unemployment compensation unless:

> it is determined that the individual earned wages in "employment" in not less than six hundred eighty hours of the individual's base year . . ..

RCW 50.04.030. The respondent, the Employment Security Department, argues that the Commissioner properly considered the actual number of hours Pelto worked in determining Pelto's eligibility for benefits under the Act. In support of this argument, the Department cites RCW 50.40.010 of the Act. This statute provides that:

> Any agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this title shall be void. . . . No employer shall directly or indirectly . . . require or accept any waiver of any right hereunder by any individual in his employ.

RCW 50.40.010. The Department argues that the right to receive unemployment benefits is a statutory right which, as a matter of public policy, may not be waived. The respondent maintains that the application of the formula in this case would result in a waiver of benefits contrary to RCW 50.40.010 because Pelto has in fact met the Act's "base year" hours requirement.

■ The respondent first raised this waiver argument in its supplemental brief before this court, and Shoreline has also presented supplemental briefing on this issue. This argument was not raised below. The court will normally decline to consider an issue raised for the first time in a supplemental brief filed after acceptance of review. *Douglas v. Freeman,* 117 Wn.2d 242, 257-58, 814 P.2d 1160 (1991). However, the court has inherent authority to consider the issue if such consideration is necessary to reach a proper decision. *See Alverado v. WPPSS,* 111 Wn.2d 424, 429-30, 759 P.2d 427 (1988), *cert. denied,* 490 U.S. 1004 (1989). We find that consideration of the Department's argument regarding RCW 50.40.010 is necessary to reach a proper decision in this case, and we accordingly address this argument.

## III

RCW 50.40.010 prohibits agreements between an employer and an employee to waive the employee's right to receive unemployment benefits. We must initially determine if application of the formula at issue in this case does in fact result in a waiver of benefits. The Act does not define the term "waive". If a term is not defined in a statute, the term will be given its plain and ordinary meaning. *Bellevue v. International Ass'n of Fire Fighters, Local 1604,* 119 Wn.2d 373, 380, 831 P.2d 738 (1992). To "waive" a right means "to relinquish voluntarily" that right. *Webster's Third New International Dictionary* 2570 (1986). We conclude that in this case, application of the formula does result in a relinquishment or waiver of Pelto's right to unemployment benefits.

Shoreline argues that the formula precludes the Department from considering the *actual* number of hours Pelto worked. Shoreline conceded that in some cases, however, application of the formula may result in underreporting the number of hours an instructor works due to the nature of that instructor's teaching assignment. Also, the record reflects that the formula is not a method for determining or limiting the number of hours Pelto was required or expected to work in fulfillment of his teaching duties, and that no such limitation currently exists. In light of these factors, application of the formula could therefore result in a relinquishment or waiver of benefits for those instructors like Pelto who are *reported* to have worked fewer than 680 hours, but who did *in fact* work at least 680 hours due to the demands of their particular teaching assignments.

Shoreline maintains that under the facts of *this* case, however, no waiver of any right has occurred. Shoreline contends that the record does not support the Commissioner's determination that Pelto worked a sufficient number of hours to qualify for benefits, and therefore application of the formula in this case does not result in a waiver of any right. In support of this assertion, Shoreline argues that three of the activities Pelto engaged in were not directly

related to his teaching duties: his learning how to use the computer software program, his attendance at noncompulsory faculty meetings, and his presentation made to the state humanities association.

Shoreline thus argues that this court should review and reverse the Commissioner's determination that Pelto worked at least 770 hours in fulfillment of his contractual duties. In its briefing before the Superior Court in this case, however, Shoreline stated that the Commissioner's findings were "not in serious dispute" and that the issue before that court was "essentially a question of law or an application of the law to undisputed facts." Clerk's Papers, at 10.

The Court of Appeals, in its review of this case, determined that Shoreline had failed to properly assign error to the Commissioner's finding that Pelto had worked at least 770 hours in fulfillment of his contractual teaching duties. *Shoreline Comm'ty College Dist. 7 v. Employment Sec. Dep't,* 59 Wn. App. 65, 70, 795 P.2d 1178 (1990). The Court of Appeals accordingly declined to review this finding and treated it as a verity on appeal. *Shoreline,* at 70 (citing RAP 10.3(g), 10.4(c); *Fuller v. Department of Empl. Sec.,* 52 Wn. App. 603, 606, 762 P.2d 367 (1988), *review denied,* 113 Wn.2d 1005 (1989)). We find the Court of Appeals did not err in treating the Commissioner's finding as a verity on appeal, and Shoreline has not presented persuasive arguments to the contrary. The Commissioner's finding that Pelto worked at least 770 hours in fulfillment of his contractual duties remains a verity in our review of this case. Moreover, even if we were to review this finding, the record indicates that the hours Pelto spent learning how to use the software system, attending noncompulsory faculty meetings, and preparing the presentation with his colleagues were *in addition* to the 770 hours Pelto had worked in teaching his students.

Pelto has thus worked a sufficient number of hours to meet the Act's "base year" hours requirement. We note that this hours requirement is only one of the requirements an individual must meet in order to qualify for benefits. The

Act also requires that an individual be actively seeking work, and be ready, able and willing to accept other suitable work which may be offered in order to qualify for benefits. *See* RCW 50.20.010(3); *Kenna v. Department of Empl. Sec.*, 14 Wn. App. 898, 545 P.2d 1248 (1976). Shoreline does not contest the fact that Pelto has met each of these additional requirements for receiving unemployment compensation. We conclude that application of the formula in this case would result in a waiver of benefits because Pelto has *in fact* met every statutory requirement for receiving unemployment compensation, including the "base year" hours requirement.

### IV

We must next determine whether RCW 50.40.010 prohibits the *kind* of waiver involved in this case, *i.e.,* a waiver negotiated through the collective bargaining process. The statute prohibits agreements made "*by an individual*" (italics ours) to waive his or her right to benefits under the Act. The statute may thus appear to *permit* agreements to waive unemployment benefits which are made on the individual's behalf through the collective bargaining process. However, the terms "*any* agreement" and "*any* waiver of *any* right" (italics ours) contained in the statute indicate that RCW 50.40.010 may prohibit agreements which are made through the collective bargaining process in addition to those made by the individual employee. Because RCW 50.40.010 is susceptible to more than one meaning, the statute is ambiguous and subject to the rules of judicial construction. *See Yakima v. International Ass'n of Fire Fighters, Local 469,* 117 Wn.2d 655, 669, 818 P.2d 1076 (1991).

When construing a statute, the court must ascertain and give effect to the Legislature's intent. *Cowiche Canyon Conservancy v. Bosley,* 118 Wn.2d 801, 813, 828 P.2d 549 (1992). The Legislature has declared that:

> . . . [E]conomic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state; involuntary unemployment is, therefore, a subject of general interest and concern which requires appropriate action

by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. Social security requires protection against this greatest hazard of our economic life. . . .

RCW 50.01.010. Pursuant to these concerns, the Legislature mandated that the Employment Security Act be "liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum." RCW 50.01.010; *see Johnson v. Department of Empl. Sec.,* 112 Wn.2d 172, 179, 769 P.2d 305 (1989).

RCW 50.40.010 prevents individuals from entering agreements which would waive their right to receive unemployment benefits. The Act's purpose would be frustrated if unemployed people who met the statutory requirements for receiving benefits were deprived of benefits due to such agreements. The Act's purpose would be *equally* frustrated if individuals could enter into such agreements through the collective bargaining process. These individuals would also be denied unemployment compensation even though they met all of the statutory requirements for receiving such compensation. The mandate of liberal construction requires that courts view with caution any construction that would narrow the coverage of the unemployment compensation laws. *Fifth Dist. Republican Comm. v. Employment Sec. Comm'n,* 19 Mich. App. 449, 452-53, 172 N.W.2d 825 (1969), *cert. denied,* 400 U.S. 866 (1970). We accordingly construe RCW 50.40.010 as precluding employers from accepting "any agreement" from an individual to waive his or her right to unemployment compensation, *including* agreements negotiated through the collective bargaining process. This construction effectuates the Act's purpose of insuring compensation to *all* qualified individuals.

Persuasive authority from other jurisdictions supports our interpretation. Many states have enacted similar statutory prohibitions against waivers of unemployment benefits. Like RCW 50.40.010, the language contained in many of these statutes prohibits waivers "by an individual" or "by an employee". The courts which have addressed this question have

almost uniformly construed these statutes as prohibiting both waivers obtained through the collective bargaining process and waivers obtained from individual employees. *See, e.g., Reynolds Metals Co. v. Thorne,* 41 Ala. App. 331, 133 So. 2d 709 (construing Ala. Code tit. 26, § 244 (1940) (recodified at § 25-4-138)), *cert. denied,* 272 Ala. 709, 133 So. 2d 713 (1961); *Employment Sec. Comm'n v. Magma Copper Co.,* 90 Ariz. 104, 366 P.2d 84 (1961) (construing Ariz. Rev. Stat. § 23-784); *General Motors Corp. v. Mulquin,* 134 Conn. 118, 55 A.2d 732 (1947) (construing Gen. Stat., Cum. Supp. 1939, § 1346e (now codified at Conn. Gen. Stat. § 31-272(a)); *Delaware Auth. for Regional Transit v. Buehlman,* 409 A.2d 1045 (Del. 1979) (construing Del. Code Ann. tit. 19, § 3371(a)); *St. Joe Paper Co. v. Gautreaux,* 180 So. 2d 668 (Fla. Dist. Ct. App. 1965) (construing Fla. Stat. Ann. § 443.01); *Jenkins v. Review Bd. of Ind. Empl. Sec. Div.,* 138 Ind. App. 12, 211 N.E.2d 42 (1965) (construing Burns 1964 Repl. § 52-1558 (recodified at Ind. Code Ann. § 22-4-33-1 (Burns 1992))); *Busch v. Reserve Mining Co.,* 415 N.W.2d 892 (Minn. Ct. App. 1987) (construing Minn. Stat. § 268.17 (1986)); *Johns-Manville Prods. Corp. v. Board of Review,* 122 N.J. Super. 366, 300 A.2d 572 (1973) (construing N.J. Stat. Ann. 43:21-15(a)); *In re Green,* 37 N.Y.2d 554, 338 N.E.2d 594, 376 N.Y.S.2d 75 (1975) (construing N.Y. Labor Law § 595); *Dudley v. Morris,* 6 Ohio App. 2d 187, 191, 217 N.E.2d 226 (1966) (construing Ohio Rev. Code Ann. § 4141.32), *aff'd,* 10 Ohio St. 2d 235, 227 N.E.2d 231 (1967); *Kozlowski Unemployment Comp. Case,* 191 Pa. Super. 83, 155 A.2d 373 (1959) (construing Pa. Stat. Ann. tit. 43, § 861); *International Union of Elec., Radio & Mach. Workers, Local Union 782 v. Texas Empl. Comm'n,* 346 S.W.2d 649 (Tex. Civ. App.) (construing Tex. Rev. Civ. Stat. Ann. art. 5221b-13(a)), *rev'd on other grounds,* 352 S.W.2d 252 (Tex. 1961). We agree with the reasoning of these courts, and conclude that RCW 50.40-.010 prohibits both waivers obtained through the collective bargaining process and waivers obtained from individual employees.

In *In re Employees of Buffelen Lumber & Mfg. Co.*, 32
Wn.2d 205, 201 P.2d 194 (1948), this court addressed the
question of whether a provision in a collective bargaining
agreement could, in effect, waive an employee's right to
receive unemployment benefits under the Act. We now recog-
nize that *Buffelen* was wrongly decided and overrule that
case.

In *Buffelen*, an employer shut down a plant for 2 weeks. A
collective bargaining agreement provided that only em-
ployees who had been with the company for 1 year or more
qualified for paid vacations during this plant shutdown. Em-
ployees who did not qualify for vacation pay during this
shutdown filed for unemployment compensation. The court
held that pursuant to the collective bargaining agreement,
these employees could not receive unemployment compensa-
tion because their unemployment during the 2-week period
was "voluntary" within the meaning of the Act. *Buffelen*, at
210-11.

Three years after the court's holding in *Buffelen*, the
Legislature amended the Employment Security Act. Pur-
suant to this amendment, RCW 50.20.115 now provides, in
part, that:

> [T]he cessation of operations by an employer for the purpose of
> granting vacations, *whether by union contract or other reasons,*
> shall in no manner be construed to be a voluntary quit nor a
> voluntary unemployment on the part of the employees.

(Italics ours.) The Legislature is presumed to be familiar
with court interpretations of statutes. *State v. Fenter,* 89
Wn.2d 57, 62, 569 P.2d 67 (1977). In this amendment, the
Legislature disapproved of the court's holding in *Buffelen*
that a collective bargaining agreement allowing for a plant
shutdown could control the interpretation of what consti-
tutes "voluntary" unemployment under the Act. The amend-
ment indicates that:

> the judicial . . . construction of the former term or phrase did
> not correspond with the legislative intent and a different
> interpretation should be given the new term or phrase.

1A N. Singer, *Statutory Construction* § 22.30 (4th ed. 1985).
The court's reasoning in *Buffelen* did not correspond with

the legislative intent behind the Act, and we now hold that *Buffelen* is overruled in its entirety.

The agreement at issue in *Buffelen* should not have precluded the Department from determining whether the individual employees in that case were *in fact* "voluntarily" unemployed. Similarly, the agreement at issue in this case should not preclude the Department from determining whether Pelto did *in fact* meet the "base year" hours requirement under the Act. Factual determinations in unemployment compensation matters are within the Department's particular area of expertise. *See Ancheta v. Daly,* 77 Wn.2d 255, 260, 461 P.2d 531 (1969). The Commissioner correctly determined that the formula contained in the collective bargaining agreement did not preclude a factual determination of whether Pelto met the "base year" hours requirement. *See Gianfelice Unemployment Comp. Case,* 396 Pa. 545, 551, 153 A.2d 906 (1959); *Delaware Auth. for Regional Transit v. Buehlman,* 409 A.2d 1045 (Del. 1979); *Youghiogheny & Ohio Coal Co. v. Oszust,* 23 Ohio St. 3d 39, 491 N.E.2d 298 (1986).

We note that provisions in a collective bargaining agreement can, in a proper case, control over certain conflicting statutory provisions. *See Rose v. Erickson,* 106 Wn.2d 420, 421, 721 P.2d 969 (1986). It is well settled that a union may lawfully waive certain statutory rights of represented employees in a collective bargaining agreement. *Metropolitan Edison Co. v. NLRB,* 460 U.S. 693, 705, 75 L. Ed. 2d 387, 103 S. Ct. 1467 (1983). The right of public employees to bargain collectively is an important right protected by statute. *See* RCW 41.56.040. Pursuant to such considerations, the New York court in *Antinore v. State,* 49 A.D.2d 6, 371 N.Y.S.2d 213 (1975), *aff'd,* 40 N.Y.2d 921, 358 N.E.2d 268, 389 N.Y.S.2d 576 (1976) held that an individual public employee who disagrees with a valid provision of a collective bargaining agreement is nonetheless bound by the agreement. *Antinore,* at 10-11.

It is also well settled, however, that an individual may not waive a right where such a waiver violates public policy. 28 Am. Jur. 2d *Estoppel and Waiver* § 161 (1966), and

cases cited therein. Where a statutorily created private right serves a public policy purpose, the persons protected by the statute cannot waive the right either individually or through the collective bargaining process. *Kelso Educ. Ass'n v. Kelso Sch. Dist. 453,* 48 Wn. App. 743, 749, 740 P.2d 889, *review denied,* 109 Wn.2d 1011 (1987). The Legislature has determined that involuntary unemployment is "a subject of general interest and concern". RCW 50.01.010. Unemployment compensation serves the public policy purpose of limiting the serious social consequences which may result from involuntary unemployment. RCW 50.01.010. This court has held that the requirements of a statute enacted for the public good may not be nullified or varied by contract. *Grandview Inland Fruit Co. v. Hartford Fire Ins. Co.,* 189 Wash. 590, 66 P.2d 827, 109 A.L.R. 1472 (1937). We accordingly recognize that a waiver of unemployment benefits, including a waiver negotiated through the collective bargaining process, is void as contrary to public policy. We agree with the New York court's determination that: " '[t]he sustenance due the unemployed is not a fit subject of private waiver, whether through collective bargaining or otherwise.' " *In re Green,* 37 N.Y.2d 554, 558, 338 N.E.2d 594, 376 N.Y.S.2d 75 (1975) (quoting *In re George,* 14 N.Y.2d 234, 242, 199 N.E.2d 503, 250 N.Y.S.2d 421 (1964)).

## V

Finally, Shoreline argues that the Commissioner's ruling that Pelto qualified for benefits constitutes an unconstitutional impairment of the contract between the college and the faculty union. This argument lacks merit. The Washington State Constitution provides that: "No . . . law impairing the obligations of contracts shall ever be passed." Const. art. 1, § 23. A contract is not considered impaired by a statute in force when the contract was made, as parties are presumed to enter contracts in contemplation of existing law. *Eskay Plastics, Ltd. v. Chappell,* 34 Wn. App. 210, 212, 660 P.2d 764 (1983) (citing *Minish v. Hanson,* 64 Wn.2d 113, 115, 390 P.2d 704 (1964); *Tri-Financial Corp. v. Department of*

*Rev.,* 6 Wn. App. 637, 643, 495 P.2d 690, 65 A.L.R.3d 1174 (1972)). The relevant provisions of the Employment Security Act existed long before the parties entered into the collective bargaining agreement in this case. Consequently, Shoreline has not established that an unconstitutional impairment of contract has occurred in this case.

The Commissioner correctly determined that the formula did not preclude the Department from making a factual determination regarding the number of hours Pelto worked in fulfilling his contractual teaching duties. The Commissioner's ruling that Pelto was eligible to receive unemployment benefits is not affected by any error of law. Pelto is therefore entitled to receive these benefits. The Court of Appeals is affirmed.

DORE, C.J., and UTTER, SMITH, and GUY, JJ., concur.

DURHAM, J. (dissenting) — The resolution of this case rests on the interpretation of the following provision of the Employment Security Act:

> Any agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this title shall be void. . . . No employer shall directly or indirectly . . . require or accept any waiver of any right hereunder by any individual in his employ.

RCW 50.40.010. The majority accepts the Employment Security Department's (Department) argument that Mr. Pelto's right to benefits has been waived by operation of the collective bargaining agreement (CBA). However, this analysis fails to recognize that the CBA did not negate any right to benefits; it merely set forth the method for computing and recording the hours worked. Under RCW 50.04.030, the right to unemployment benefits can only arise when the employee has at least 680 hours in the base year reported to the Department. Pursuant to the CBA, Pelto was shown to have worked only 513 hours. Because Pelto failed to meet the statutory requirements for compensation, he at no time had any right to waive.

In order to reach its conclusion that a waiver of benefits has occurred here, the majority construes RCW 50.40.010 to avoid its plain language. Essentially, the majority removes the phrase "by an individual" from the statute so that it can be applied to a valid CBA. This is done by reading an unnecessary ambiguity into the statute. Majority, at 405. The majority believes that "any agreement" indicates an intent to apply this statute to CBAs. Majority, at 405. However, the statute actually states that it applies to "[a]ny agreement *by an individual*". (Italics mine.) RCW 50.40.010. This court is required to give meaning "to every word, clause and sentence of a statute and . . . no part should be deemed superfluous." *Clark v. Pacificorp*, 118 Wn.2d 167, 183, 822 P.2d 162 (1991). An "individual" is defined as "a single human being as contrasted with a social group or institution". *Webster's Third New International Dictionary* 1152 (1971). Where a statute defines the class upon which it operates, it can be inferred that the Legislature intended to exclude any omitted categories. *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 134, 814 P.2d 629 (1991). There is no ambiguity in this statute, and the phrase "by an individual" means that this statute was not intended to apply to CBAs.

Even were the majority correct in its assumption that this statute applies to CBAs, it still has not been shown that any waiver of benefits actually occurred. The formula used by Shoreline standardized the reporting of part-time employees' hours, and pursuant to this formula, Pelto never reached the statutory minimum for receiving benefits. Support for this conclusion is found in the regulations of the Department itself. The regulations contemplate that employers and employees will use a standard method for computing regular hours. WAC 192-16-002(4) defines "hours worked" in part as follows:

> Employees on salary. If a salaried employee works irregular nonstandard weeks, he or she shall be reported for the actual number of hours worked. In the absence of reliable time figures, a full-time salaried employee will be reported for 40 hours worked for each week in which any of his or her duties are performed.

The hours-allowed formula found in the CBA is consistent with WAC 192-16-002(4). The regulation allows reporting of an estimate of hours worked in the absence of reliable time figures. Just as the regulation allows an employer to report its full-time employees as working 40 hours a week, whether they do or not, the formula here is a method agreed upon to standardize the weekly reported hours of part-time employees. Thus, the failure to report actual hours is not inconsistent with the Employment Security Act.

Moreover, the formula is equitable in its calculation of the hours of part-time employees. It was intended to represent not only the hours to be reported, but also the hours required to complete the job. Other colleges report hours based solely on classroom hours, or allow 1 hour of preparation time for each hour in the classroom. Shoreline's formula recognizes that a faculty member works outside of the classroom, but limits the number of hours expected of its part-time faculty. Pelto appears to have spent three times as much time preparing for class and meeting with students as he did actually teaching. While such diligence may be commendable, the college has a right to expect the provisions of its CBA to control the actual hours reported.[1]

To now disregard provisions in a CBA which were freely bargained for also undermines the policies set forth in RCW 28B.52 and the Public Employees' Collective Bargaining Act, RCW 41.56. The current version of RCW 28B.52 states that one of the purposes of the chapter is to establish "orderly procedures governing the relationship between the employees and their employers which procedures are designed to meet the special requirements and needs of public employment in higher education." RCW 28B.52.010. The Legislature has commanded that the Public Employees' Collective Bargaining Act be "liberally construed", RCW 41.56.905, and

---

[1]Absent a recognized formula for computing hours, it is nearly impossible to judge the reasonableness of reported hours for occupations such as teaching where preparation time is a highly subjective factor. Indeed, the record is clear that the 770 hours accepted by the Commissioner were based only on *estimates* provided by Pelto.

this court has similarly found that exceptions to such employees' rights to collectively bargain are to be "narrowly confined". *Yakima v. International Ass'n of Fire Fighters, Local 469*, 117 Wn.2d 655, 670, 818 P.2d 1076 (1991). The statute in effect at the time of the agreement allowed negotiation on "policies relating to, but not limited to, . . . personnel, hiring and assignment practices, leaves of absence, salaries and salary schedules and noninstructional duties." Former RCW 28B.52.030. The "hours-allowed" formula was a legitimate subject for bargaining within the terms of the statute.[2] There is no conflict here with RCW 50.40.010, since a right to benefits will still arise once the statutory minimum number of hours is met.

Even were a conflict to exist, we have previously found that a validly negotiated CBA can be given effect in the face of a conflicting statute. In *Rose v. Erickson*, 106 Wn.2d 420, 421, 721 P.2d 969 (1986), we held that the provisions of a CBA regarding grievance procedures, including arbitration, were paramount to the procedures set forth in the civil service statute. We recognized there that an actual conflict existed between RCW 41.14, describing the proper grievance procedures for civil service employees, and RCW 41.56, granting collective bargaining rights to public employees. *Rose*, at 424. Nevertheless, we held that the terms of the CBA controlled.

This reasoning is supported in other jurisdictions as well. For instance, a New York court interpreting an arbitration clause similar to that in *Rose* held that the terms of the CBA controlled. *Antinore v. State*, 49 A.D.2d 6, 371 N.Y.S.2d 213 (1975), *aff'd*, 40 N.Y.2d 921 (1976). Even when an individual public employee disagrees with certain provisions, a valid

---

[2]The Court of Appeals decision below mistakenly relied upon the most recent version of RCW 28B.52, which mandates collective bargaining "with respect to wages, hours, and other terms and conditions of employment, such as procedures related to nonretention, dismissal, denial of tenure, and reduction in force." RCW 28B.52.020(8). However, this language was inserted into the statute in 1987, and although no CBA is in the record, such agreement must have been entered into prior to 1986, which is the year in which Pelto worked for Shoreline.

CBA binds the employee. *Antinore*, at 10-11. The court there stated:

> The fact that this plaintiff did not himself approve the agreement negotiated by his representative and now disclaims satisfaction with one aspect of the agreement makes it no less binding upon him. Labor relations involving any sizeable group cannot be expected to proceed only with the consent of each member of the group. Orderly process requires that agreements be made and complied with even in the face of minority dissent or disapproval.

*Antinore*, at 10-11. An Alaska court found that even constitutional rights of public employees could be waived in the CBA. *Storrs v. Municipality of Anchorage*, 721 P.2d 1146, 1150 (Alaska 1986), *cert. denied*, 479 U.S. 1032 (1987).

Common sense is in accord with case law. If the CBA is to have any meaning at all, it must be given effect over the objections of a single employee. The statute itself explicitly applies only to agreements entered into by individuals. The formula for "hours-allowed" was contained in a duly executed agreement; it was freely negotiated and is binding on all employees. The collective bargaining process would be weakened if individual employees could circumvent any resulting agreement. The "hours-allowed" formula did not waive any rights to unemployment compensation. It merely defined an equitable and unintrusive method of recording and reporting the hours worked by part-time staff to the Department.

I would therefore reverse the Court of Appeals and reinstate the decision of the Administrative Law Judge.

BRACHTENBACH, DOLLIVER, and ANDERSEN, JJ., concur with DURHAM, J.